476 A.2d 27

**Michael J. AIELLO and Kathy Ann Aiello**

v.

**ED SAXE REAL ESTATE INC., and Sidney F.
Jones, Jr., Appellants.**

Superior Court of Pennsylvania.

Argued Nov. 1, 1983.

Filed April 19, 1984.

Petition for Allowance of Appeal Granted Sept. 17, 1984.

432

Daniel W. Shoemaker, York, for appellants.

Henry O. Heiser, III, Gettysburg, for appellees.

Before WICKERSHAM, WIEAND and CERCONE, JJ.

CERCONE, Judge:

This appeal arises from the judgment entered against Ed Saxe Real Estate, Inc., and its salesperson, Sidney F. Jones, Jr., who were defendants in an action in trespass for fraudulent misrepresentation.[1] Plaintiffs, Michael J. and Kathy Ann Aiello, sought to prove that Jones deliberately misrepresented to them the soil conditions of a tract of land which they eventually purchased. Because the soil was unsuitable for a conventional sewage system, a fact which they claimed was known to Jones, but not conveyed to them in spite of their direct inquiries, their plans to subdivide the tract in the manner which they had intended were thwarted. A jury awarded the plaintiffs, appellees herein, a verdict in the amount of $13,400.00 against Jones, and a verdict of $12,000.00 against Ed Saxe Real Estate, Inc., hereinafter Saxe. For the reasons set forth below, we vacate the judgment in favor of appellee as against appellant Saxe, and enter judgment N.O.V. in Saxe's favor. We affirm the judgment as to appellant Sidney F. Jones, Jr.

In reviewing a lower court's denial of a motion for judgment *non obstante veredicto*, we will only reverse the lower court when we find "an abuse of discretion or an error of law which controlled the outcome of the case."

---

1. The lower court granted the motion of both defendants for a compulsory nonsuit on assumpsit counts.

*McDevitt v. Terminal Warehouse Co.*, 304 Pa.Super. 438, 442, 450 A.2d 991, 993 (1982). In ruling upon these motions, the trial judge must consider "the evidence, together with all reasonable inferences that may be drawn therefrom ... in the light most favorable to the verdict winner." *Carrender v. Fitterer*, 310 Pa.Super. 433, 436, 456 A.2d 1013, 1014 (1983). Accepting as true all facts and proper inferences which tend to support the contention of the party against whom the motion has been made, and rejecting all testimony and inferences to the contrary, the trial judge must grant said motions when no two reasonable minds could differ that, as a matter of law, the party has failed to make out his case. *Thomas v. Allegheny & Eastern Coal Co.*, 309 Pa.Super. 333, 455 A.2d 637 (1983).

It was established at trial that appellees, a young married couple, decided to buy some land in order to subdivide it and gain a profit on their investment. They contacted Jones who showed them several tracts, including 87 acres owned by one Lystad, not a party to this case. Evidence established that a prior sales agreement for this Lystad tract in the amount of $80,000.00, had fallen through owing to the failure of the land to pass five percolation tests for a conventional sewage system. A series of twenty-one soil probes had been conducted. Twenty showed the soil was unsatisfactory; one indicated that the soil was marginally suitable for a sand mound system, but not a conventional system.

Appellees testified that they specifically asked Jones about the soil's suitability for a sewage disposal system. Jones reassured them that five soil percolation tests had been performed on the land, and that three revealed a suitability for a conventional system, and that two were conducive to the sand mound system. Appellees, in reliance on these representations, then purchased the tract for $80,-000.00. It was only after their acquisition of the land and subsequent testing that they discovered the land was not as Jones had represented to them. Jones denied making any statements about five percolation tests and insisted that he

disclosed to appellees just how poor the soil was. Ed Saxe testified that he owned the real estate firm which is also appellant in this case. As the trial court stated in its opinion, it is undisputed that Saxe Real Estate had no knowledge of any representation when it was made, did not participate in making it, and has not expressly ratified it. It is also undisputed that no percolation tests were performed on the property prior to appellees' purchase and that the soils were poor.

Appellees' theory against Ed Saxe Real Estate Company, Inc., was solely on the theory of *respondeat superior.* After pre-trial briefs and arguments on this issue, and additional argument at sidebar, the trial court ruled, as a matter of law, that Saxe could indeed be found liable, if the jury found liability existed as to Jones. This ruling of the trial court was in error, and, which fact compels our reversal and entry of judgment in favor of Saxe.

■ Our starting point is the tort of fraudulent misrepresentation or deceit, which is the basis of the within cause of action. Our court has set forth the elements of such an action.

> The elements of a fraud and deceit action in trespass may be said to consist of: (1) a false representation of an existing fact, *Fidurski v. Hammill,* 328 Pa. 1, 195 A. 3 (1937); (2) if the misrepresentation is innocently made, then it is actionable only if it relates to a matter material to the transaction involved; while, if the misrepresentation is knowingly made or involves a non-privileged failure to disclose, materiality is not a requisite to the action, *DeJoseph v. Zambelli,* 392 Pa. 24, 139 A.2d 644 affirming 11 Pa.D. & C.2d 447 (1958); (3) scienter, which may be either actual knowledge of the truth or falsity of the representation, reckless ignorance of the falsity of the matter, or mere false information where a duty to know is imposed on a person by reason of special circumstances (16 P.L.E., Fraud §§ 7, 4) reliance, which must be justifiable, so that common prudence or diligence could not have ascertained the truth; and (5) damage to the person

relying thereon. *Shane v. Hoffmann,* 227 Pa.Superior Ct. 176, 182, 324 A.2d 532, 536 (1974).

And in the same case, we explained that, in requiring proof of scienter on the part of a principal at the time of a misrepresentation made by an agent, our law in Pennsylvania does not follow the general rule.[2] In *Carl W. Littler et ux. v. Everett B. Dunbar, trading as Acme Real Estate Company, et al.,* 166 Pa.Superior Ct. 271, 70 A.2d 365, *reversed on other grounds,* 365 Pa. 277, 74 A.2d 650 (1950), an agent of Dunbar informed the purchasers of a home that the attached garage, for which he had no key, was certainly long enough to accommodate any then modern automobile like the purchasers' Lincoln Zephyr. On the strength of his representation, the purchasers signed a sales agreement and paid $1,000.00 in hand money toward their purchase of the house. When the inadequacy of the garage was discovered, the purchasers sued only the broker Dunbar, to recover their hand money. Citing to the necessity of scienter on the part of the broker in order to find him liable in an action for trespass in fraud and deceit based on his agent's misrepresentation, we entered judgment N.O.V. for the purchasers' failure to allege or prove the broker's scienter.

This leads us to *Shane v. Hoffmann, supra.* In that case, plaintiffs were purchasers of a residence with an undisclosed sewage problem. When they were surprised by the flooding of their basement with sewage a short while after they moved in, the Shanes brought suit against one James F. Hoffmann, individually and t/d/b/a C.J. Hoffmann Agency with three other Hoffmanns, and against the vendor. It was undisputed that the salesman who made the misrepresentations about the plumbing was also a broker and partner in the real estate agency that was also sued. The agency did not contest its liability. It appears, then, that in *Shane,* the salesperson was also the broker; thus, the *respondeat superior* dilemma was not present as be-

2. A principal is liable for his agent's misrepresentation made within the scope of his authority even though amounting to fraud and deceit. *See,* Restatement of Agency, §§ 257 and 258.

tween salesperson and broker, as in the instant case and in *Dunbar, supra.* Our court said:

"Under the circumstances, we hold that the Agency and its salesman are liable for damages to the purchasers-appellees who relied on representations made by them regarding the condition of the sewer system, the true condition being known at the time the representations were made." *Shane v. Hoffmann, supra,* 227 Pa.Super. at 183, 324 A.2d at 537.

Where the importance of scienter arose in *Shane* was in plaintiffs' suit against the vendor. Our court cited the necessity of scienter in order to hold the vendor liable. Thus, our court declined to attribute vicarious liability to the broker in a broker/salesperson relationship for the tort of fraud and deceit, but found the vendor herself violated her duty to disclose a dangerous condition known to her (Restatement of Torts, 2d, § 353) when she was asked at the closing about the plumbing in the house. Thus, her own scienter was sufficiently proven. It was on that theory that the judgment was affirmed.

Thus, the Pennsylvania requirement of scienter as to fraud and deceit when deciding a broker's liability in a broker/salesperson relationship is still intact after *Shane.*[3]

■ The trial court did affirm the viability of the scienter requirement in general, but it found as a matter of law that because the nature of the real estate broker/salesperson relationship is that of master/servant, that, in that case, the scienter requirement for fraud drops out. Appellee and the lower court advance the unique tenor of fraud in a real estate context as not requiring the scienter element. They cite the "Real Estate Licensing Act," Act of Feb. 19, 1980, P.L. 15, No. 9, 63 P.S. § 455.101, *et seq.,* which requires strict supervision of salespersons by the brokers who employ them. However, the control evidenced by that Act does not serve to hold a broker for every misrepresentation of a salesperson employed by him, absent his or her own

3. The necessity of scienter was explained in *Eckrich v. DiNardo,* 283 Pa.Superior Ct. 84, 91, 423 A.2d 727, 730 (1980).

knowledge. The Act so holds in the context of license revocation.

63 P.S. § 455.702 Imputed knowledge, limitations

No violation of any of the provisions of this act on the part of any salesperson, associate broker, or other employee of any licensed broker, shall be grounds for the revocation or suspension of the license of the employer of such salesperson, associate broker, or employee, unless it shall appear upon the hearings held, that such employer had actual knowledge of such violation. A course of dealing shown to have been followed by such employee shall constitute *prima facie* evidence of such knowledge upon the part of his employer.

1980, Feb. 19, P.L. 15, No. 9, § 702, imd. effective.

In the Act, therefore, which outlines the important duties and responsibilities of real estate personnel as they relate to each other, a broker's actual knowledge must be present before a wrongful act of an employee affects his or her licensing status.

We hold, therefore, that in an action in trespass for fraudulent misrepresentation against a broker as principal, on a theory of *respondeat superior* for the tortious acts of its salesperson/agent, scienter of the broker must be established in order for recovery to lie against the broker.[4] In the instant case, no evidence was presented even to suggest that Saxe was aware of Jones' misrepresentation regarding the soil tests. Accordingly, we vacate the judgment in favor of appellees as against appellant Saxe, and enter judgment N.O.V. in favor of Saxe.

Our attention now turns to appellant Jones who, in his own right, challenges the judgment entered against him on the basis of various alleged trial errors. We will address these *seriatim*.

---

**4.** Given our disposition on this issue, it is unnecessary for us to discuss appellant's allegations that the lower court erred in ruling as a matter of law that Jones was an employee of Saxe, not an independent contractor.

438

■ Appellant alleges two court errors which are intrinsically connected to the defense attorney's dual representation of Jones and Saxe. He claims defense counsel should have been permitted to cross-examine each defendant, since each could be considered an adverse party as related to the other. He relies on *Peters v. Shear*, 351 Pa. 521, 41 A.2d 556 (1945). But, in that case, plaintiff-wife's attorney called her husband on direct examination. He had been joined as an additional defendant by the defendant in an auto accident case. Plaintiff's attorney sought to set the stage for the facts in which the husband figured as the driver of the car in which his wife was injured. The court held that the attorney for the husband as additional defendant would be permitted to cross-examine him. In the instant case, the defendants were both called as on cross-examination by plaintiffs' counsel, not on direct, as in *Peters*.

■ Here we have a different situation. Defense counsel's problem stemmed not from the court's refusal to allow him to cross-examine his own clients, but from the fact that he represented both at all.[5] Counsel pleaded surprise when, at the close of plaintiffs' case plaintiffs sought to amend their complaint to include the theory of agency as underpinning their case against Saxe. However, in this predicament we must agree with the lower court and with appellees. Counsel for appellants revealed by his request to lead his own clients that he was aware of their inconsistent defenses. It was not suddenly at the close of plaintiffs' case that he was faced with a totally different theory of liability as between his two clients. Rather, the vicarious liability issue was the subject of pre-trial briefs and in-court argument albeit the nonconformity of the complaint with these

**5.** Concretely, counsel's inquiry of Jones was objected to and sustained because of its leading nature:
"Mr. Jones, in your relationship with the corporation, would I be correct to say that you're an agent or act as an agent of Ed Saxe." Counsel, acting on Saxe's behalf, sought to elicit from Jones the fact that an independent contractor status existed between the two. It may not have been in Jones' best interest for the contractual arrangement to be characterized as "independent contractor," while Saxe would definitely benefit from such an arrangement.

developments. At no time did counsel for appellants seek a mistrial or the appointment of additional counsel for one of his clients. For him to complain now that trial error was responsible for his predicament when he should have been aware of his clients' inconsistent defenses prior to appellees' motion to amend strains credulity. Pa.R.C.P. 1033 clearly permits an amendment to conform the pleading to the evidence. Appellant relies on *West Penn v. Bethlehem Steel Corp.*, 236 Pa.Superior Ct. 413, 348 A.2d 144 (1975), in which our Court affirmed the lower court's denial of an amendment on the last day of an eight week trial when the amendment would have effected a complete change in the theory of liability. But unlike *West Penn*, in the instant case the amendment was implicit from developments early in the trial. We cannot say that the lower court abused its discretion in granting appellees' motion to amend.

■ As for appellant's contention that the Court erred in sustaining an objection to his question of witness Shultz regarding the feasibility of constructing a waste treatment plant to service a multi-subdivided tract, we note that counsel had already twice posed the question immediately prior to the objected question. The witness twice answered that the question was too speculative to be addressed. We see no error in the court's ruling.

■ Appellant argues that counsel for appellees improperly argued in his closing that appellees

"... are young people. They don't have a lot of money. You didn't get the impression I would assume that they have a lot of money. That's a lot of dollars."

and

"Had they known the facts are they going to offer to buy that land? No. If they know the facts, they're going to say we'll buy it for fifty and sixty. The soil is no good."

While our Supreme Court has ruled that references to the relative affluence of parties are highly inappropriate, *Kuchinic v. McCrory*, 422 Pa. 620, 222 A.2d 897 (1966), we do

not deem the challenged statements to be so prejudicial to warrant the grant of a new trial to Jones.

 Additionally, appellant argues that counsel for appellees in his summation improperly placed the burden of production of certain test results on appellants. Objectionable statements in a closing argument must be viewed in the context of both arguments. *Commonwealth v. Dozier*, 294 Pa.Superior Ct. 249, 439 A.2d 1185 (1982). Appellees' attorney argued before the jury:

"... I think Mr. Shoemaker [counsel for appellants] said why weren't these test results asked for at settlement. Where are they? They have never been produced. They never produced any kind of test reports; one sandmound, two sandmounds, three sandmounds, nothing produced at all from the files of Ed Saxe Real Estate, Inc. Never produced. What can you draw from that? I suggest that you draw your common sense and think about the demeanor of the witnesses and some of the inconsistencies in the testimony."

From the context of the challenged statements, it is clear that counsel for appellees was not referring to appellant's burden at trial, but to their behavior during the course of negotiations with appellees regarding the purchase of the land. We see nothing prejudicial in this.

 As for appellant's contentions regarding damages, we find no error in either the court's supplemental charge, nor in the jury's award of loss of bargain damages. Plaintiffs are required to prove their damages by a preponderance of the evidence; damages not proved are not recoverable. *Wright v. Buckeye Coal Co.*, 290 Pa.Superior Ct. 231, 434 A.2d 728 (1981). The Court instructed the jury that loss of the benefit of the bargain was

"The difference between the profits that they would have reasonably expected to gain from the property had it been as represented and which have been proven to a reasonable degree of certainty minus the profits that they will recover from the property as it is."

Appellee presented the testimony of three witnesses from whom the jury was able to determine the damages which it apportioned. Moreover, we see that no prejudice inured to appellant by the court's supplemental charge to the jury on the damages issue.

The judgment is affirmed as to appellant Jones.

Judgment is vacated in favor of appellant Ed Saxe Real Estate, Inc.; judgment N.O.V. is entered in favor of appellant Ed Saxe Real Estate, Inc. Verdict and judgment against appellant Sidney F. Jones, Jr., are affirmed.

WIEAND, J., concurs in the result.