493 A.2d 1358

Joseph M. KEARNS and Elizabeth Jane
Kearns, H/W, Appellees,

v.

William R. CLARK, M.D., Appellant.

Joseph M. KEARNS and Elizabeth Jane Kearns, H/W,

v.

RIDDLE MEMORIAL HOSPITAL and Marie T. Burke, M.D.

Appeal of RIDDLE MEMORIAL HOSPITAL.

Superior Court of Pennsylvania.

Argued July 10, 1984.

Filed April 12, 1985.

Reargument Denied June 19, 1985.

32

34

J. Grant McCabe, III, Philadelphia, for appellant (at 2997).

James E. Beasley, Philadelphia, for appellees.

Before WIEAND, OLSZEWSKI and POPOVICH, JJ.

WIEAND, Judge:

Dr. William R. Clark performed a hysterectomy for Elizabeth Jane Kearns at the Riddle Memorial Hospital. He was assisted by Dr. Johnson, an employee of the hospital. Eight days later, after Mrs. Kearns had continued to complain of pain, it was discovered that she had a blocked ureter. This, it was shown, had been caused by a wayward suture placed in the ureter. The left kidney thereafter became diseased and died, and it became necessary to remove the same. Mrs. Kearns and her husband filed separate actions against Dr. Clark and the hospital, which were consolidated and tried before a jury. The jury returned a verdict finding both defendants negligent and awarding damages of $203,000 to the wife-plaintiff and $105,000 to the husband-plaintiff. Post-trial motions were denied, and the verdicts were reduced to judgment. Dr. Clark and the hospital appealed.

I. DR. CLARK'S LIABILITY.

In reviewing a denial of a motion for judgment n.o.v., the evidence and all reasonable inferences therefrom must be considered in the light most favorable to the verdict winner. *Aiello v. Ed Saxe Real Estate Inc.*, 327 Pa.Super. 429, 435, 476 A.2d 27, 29 (1984); *Reichman v. Wallach*, 306 Pa.Super. 177, 184, 452 A.2d 501, 505 (1982). A judgment n.o.v. should be entered only in clear cases, and all doubt should be resolved in favor of the verdict winner. *Rivera v. Philadelphia Theological Seminary*, 326 Pa.Super. 509,

521, 474 A.2d 605, 609 (1984); *Reichman v. Wallach,* 306 Pa.Super. at 184–185, 452 A.2d at 505. A motion for judgment n.o.v. can properly be granted only "when no two reasonable minds could differ that, as a matter of law, the party has failed to make out his case." *Aiello v. Ed Saxe Real Estate Inc., supra* 327 Pa.Super. at 433, 476 A.2d at 29.

■ The evidence in this case was sufficient, if believed, to show that Dr. Clark had failed to identify and protect the ureter, had sutured the ureter, thereby causing it to be obstructed, and had failed to provide adequate post-operative care. The obstruction to the ureter prevented the passage of urine from the kidney into the bladder and thereby caused a painful swelling of the kidney. A failure to correct it promptly, a jury could find, caused the death and ultimate loss of the kidney.

Appellees were not required to exclude every possible explanation for the loss of Mrs. Kearns' kidney. "[I]t is enough that reasonable minds are able to conclude that the preponderance of the evidence shows defendant's conduct to have been a substantial cause of the harm to plaintiff." *Hamil v. Bashline,* 481 Pa. 256, 266, 392 A.2d 1280, 1285 (1978). The evidence in this case was sufficient to sustain the finding of the jury that Dr. Clark had negligently caused the injuries of which Mrs. Kearns complained.

The trial court also found that the jury's verdict imposing liability on Dr. Clark was not against the weight of the evidence. We will reverse only for a manifest abuse of discretion. *Mattox v. Philadelphia,* 308 Pa.Super. 111, 115, 454 A.2d 46, 48 (1982). We find no abuse of discretion in this case.

■ Dr. Clark argues in support of his motion for new trial that Dr. Varano, a urologist, was incompetent to evaluate and express an opinion about the performance of Dr. Clark, a gynecologist. In considering whether to order a new trial because of the trial court's ruling that Dr. Varano was qualified to testify as an expert, we keep in

mind that the ruling was within the sound discretion of the trial court. We will not order a new trial unless the ruling was so clearly erroneous as to constitute an abuse of discretion. *Dambacher v. Mallis*, 336 Pa.Super. 22, 37, 485 A.2d 408, 415 (1984). In *Regan v. Steen*, 229 Pa.Super. 515, 331 A.2d 724 (1974), a surgeon was permitted to express an opinion that death of tissue had been caused by x-ray radiation. It was argued that because he was a surgeon and not a radiologist he should not have been permitted to testify as an expert. This Court held: "Due to the witness's familiarity with the use of x-ray and his knowledge of the results of radiation given in massive doses, we find no abuse of discretion on the part of the trial judge in admitting his testimony." *Id.*, 229 Pa.Superior Ct. at 522, 331 A.2d at 728. Accord: *Christy v. Darr*, 78 Pa.Cmwlth. 354, 359, 467 A.2d 1362, 1364–1365 (1983) (neurosurgeon permitted to testify regarding double vision and loss of hearing suffered by the plaintiff); *Workmen's Compensation Appeal Board v. Jones & Laughlin Steel Corp.*, 22 Pa.Cmwlth. 469, 472, 349 A.2d 793, 795 (1975) (orthopedist permitted to testify as expert regarding urological and psychological effect of fractured pelvis). Dr. Varano, a urologist, was familiar with the pre-operative identification and protection of ureters and had assisted in the performance of prior hysterectomies. The trial court did not commit an abuse of discretion by allowing him to testify as an expert witness.

[3, 4] In the motion for new trial filed in this case, Dr. Clark averred "the Court erred with respect to its charge." In his appellate brief, Dr. Clark states the sufficiency of the trial court's jury instructions as follows:

THE CHARGE OF THE COURT BELOW FAILED CLEARLY AND CORRECTLY TO DEFINE THE ISSUES TO BE RESOLVED BY THE JURY; FAILED ACCURATELY, IMPARTIALLY AND WITHOUT PREJUDICE TO DEFENDANTS TO STATE IN PLAIN LANGUAGE THE APPLICABLE PRINCIPLES OF LAW GOVERNING THE ISSUES OF LIABILITY AND CAU-

SATION PRESENTED AT TRIAL; AND FAILED TO ASSIST THE JURY IN APPLYING SUCH LEGAL PRINCIPLES TO THE FACTS OF THE CASE PRESENTED....

It is questionable whether the motion for new trial and appellate brief are sufficient to preserve for appellate review the issue of whether the trial court should have charged on principles of liability in view of the fact that the jury was required to answer a series of special interrogatories. In any event, the interrogatories used in this case were general, and the trial court's instructions regarding negligence, causation and liability were appropriate. Dr. Clark has failed to direct our attention to any specific error of omission or commission by the trial court, and our own review suggests a general charge which was free of error. When an appellate court reviews a trial judge's charge to the jury, it must view the charge as a whole in order to determine if error occurred. *McCay v. Philadelphia Electric Co.*, 447 Pa. 490, 291 A.2d 759 (1972); *Bohner v. Stine*, 316 Pa.Super. 426, 463 A.2d 438 (1983).

Dr. Clark also argues that the trial judge prevented the jury from considering his defense of superseding cause. He offered specific points for charge on this defense, which the court declined to use. Instead, the trial judge stated that he would cover the defense generally in his charge. Dr. Clark asserts that the general charge failed to instruct the jury adequately regarding superseding cause and that this was prejudicial error. "A trial judge has wide latitude in charging the jury, and may use any particular language provided the language used adequately and fully conveys to the jury the law applicable to the facts of the case." *Fish v. Gosnell*, 316 Pa.Super. 565, 580, 463 A.2d 1042, 1050 (1983). Accord: *Kopar v. Mamone*, 419 Pa. 601, 215 A.2d 641 (1966). The trial court correctly charged the jury on causation and, with respect to other causes, stated: "The fact that some other factor may have been a contributing cause of an injury does not relieve a defendant of liability, unless you find that such other cause would have produced

the injury complained of independently of his negligence." This was sufficient.

It is also contended that the trial court committed prejudicial error by refusing to allow certain documents to be taken into the deliberating room during the jury's deliberations. Specifically, the trial judge excluded the curriculum vitae of two defense expert witnesses, an expert witness' report, and Dr. Clark's patient records of Mrs. Kearns. "The general rule in Pennsylvania is that exhibits properly admitted into evidence, with the exception of depositions and transcripts of testimony, may, within the discretion of the trial court, be sent out with the jury." *Wilson v. Pennsylvania Railroad Co.*, 421 Pa. 419, 432 n. 8, 219 A.2d 666, 673 n. 8 (1966). Accord: *Solomon v. Luria*, 213 Pa.Super. 87, 246 A.2d 435 (1968). We conclude that the trial judge in this case did not abuse his discretion by refusing to permit the jurors to take out with them the exhibits which had been received in evidence. The substantive matters in the two curriculum vitae were received as testimony during the qualification of Dr. Goodner and Dr. Hill as experts. The educational backgrounds and professional credentials of each were fully described and discussed. Similarly, the four page report of Dr. Goodner was the subject of direct testimony and cross-examination, during which portions of the report were read into the record. The relevant substance of these three documents, therefore, was placed before the jury, and it was within the judge's discretion to withhold the actual documents from the jury during the period of its deliberations.

The patient records of Mrs. Kearns raised a different concern. The medical terms and notations contained therein were subject to misinterpretation in the absence of explanation. These records had been received in evidence, and any party could have made reference thereto or directed the jury's attention to specific entries. However, it was within the trial judge's discretion to curtail the jury's unfettered examination of complete records kept by Dr. Clark during his care and treatment of Mrs. Kearns.

## II. THE LIABILITY OF RIDDLE MEMORIAL HOSPITAL.

██ Dr. Johnson, an employee of the hospital, assisted Dr. Clark in performing the hysterectomy. The evidence of improper pre-surgical identification of the ureter and the suturing thereof had equal application to Dr. Johnson. Indeed, the evidence was that he had done the suturing on the side where the kidney was lost. When we consider the evidence and all reasonable inferences therefrom in the light most favorable to Mr. & Mrs. Kearns, the verdict winners, it seems patently clear that there was sufficient evidence to show that Dr. Johnson was negligent and that the hospital was vicariously liable therefor.

We reject the hospital's contention that it was unfairly surprised when, at trial, the plaintiffs attempted to premise hospital liability on the negligence of Dr. Johnson. The complaint had alleged negligent care by the "agents, servants and employees" of the hospital, and an answer to interrogatories included "interns and residents." The fact that Dr. Johnson was a "house doctor" rather than a "resident" was an insignificant variance and not an adequate reason for excluding evidence of his negligence. His role was readily apparent from an examination of the hospital's records. It was also disclosed at the pre-trial conference. The trial court did not err in refusing to exclude his negligence as a basis for imputing negligence vicariously to the hospital. There was no surprise.[1]

██ During cross-examination of Dr. Clark, counsel for the hospital read aloud various portions of the complaint

---

**1.** The hospital, in its brief and supplemental brief, discusses at great length the law regarding the amendment of complaints which introduce new causes of action. The hospital contends that the plaintiffs, in essence, stated a new cause of action after the running of the statute of limitations by claiming the negligence of Dr. Johnson just prior to trial. Our disposition of the hospital's argument regarding notice and surprise adequately disposes of this argument. We note, however, that the hospital's argument is misplaced. Appellees did not attempt to effectuate an amendment of their complaint; and their assertion at trial of Dr. Johnson's negligence did not have the effect of adding a new cause of action.

which had been filed against Dr. Clark, apparently to show plaintiffs' averments that he believed Clark alone had been negligent. Plaintiffs' counsel thereafter read portions of the complaint filed against the hospital. When the hospital attempted to read its answer to these averments, an objection was sustained. The hospital contends that this was error. We disagree. The conduct of a trial is within the discretion of the trial judge, and his exercise of discretion will not be reversed in the absence of an abuse thereof. See: *Air Products and Chemicals, Inc. v. Johnson*, 296 Pa.Super. 405, 433, 442 A.2d 1114, 1129 (1982); *DeFulvio v. Holst*, 239 Pa.Super. 66, 68, 362 A.2d 1098, 1099 (1976). The trial court specifically instructed the jurors about the nature of a complaint and cautioned them regarding its limited use and value. It was not an abuse of discretion to deny a request to read the answer to the jury. Similarly, we find no abuse of discretion in the trial court's refusal to read to the jury those points for charge submitted by the hospital which would have served only to remind the jury about pre-trial proceedings in which Dr. Clark had been alleged to be solely liable.

## III. DAMAGES.

The trial court told the jury that the wife-plaintiff's claim was made up of seven parts. The husband-plaintiff's claim, the jury was told, had three elements. The court then said: "After you consider each of those elements as to each claim, you then add all of these elements together into one single lump sum verdict for each of the two plaintiffs." With respect to the wife-plaintiff, the court said, inter alia, that she was:

entitled to be compensated for any loss or reduction of future earning capacity that you find that she will suffer as a result of this incident. In determining this amount you must ascertain the difference between the yearly amount she probably would or could have earned but for the injury and the amount which she probably will be able to earn during the period of any disability.

You may consider the type of work that she has done, the type of work which in view of her physical condition, education, experience and age she would have been doing and will be doing in the future, the extent and duration of her injury, together with all the other matters reasonably relevant.

With respect to the husband's claim for future medical bills, the court told the jury: "Plaintiff-husband is also entitled to be compensated for all medical expenses which you find that he will reasonably incur in the future for the treatment and care of his wife's continuing injury."

Appellants argue, and we are constrained to agree, that this was error. There was not one iota of evidence upon which to make an award for loss of future earning capacity or for future medical expenses. The only evidence pertaining in any way to future earnings came from Mrs. Kearns. She testified that she had returned to work on September 20, 1975, more than five years prior to trial, at the same salary which she had been receiving when admitted to the hospital for a hysterectomy on May 12, 1975.[2] There was no medical or lay evidence that her future earning capacity would be impaired in any way. Similarly, there was no evidence from which a jury could find that future medical expenses were likely. Although the testimony showed that Mrs. Kearns had had a kidney removed,[3] there was no evidence that any future medical expenses would be incurred.[4] Not even the plaintiffs predicted that they would incur future medical expenses because Mrs. Kearns had only one kidney or that there was a loss of future earning capacity because of the loss of one kidney.

In *Gordon v. Trovato,* 234 Pa.Super. 279, 286, 338 A.2d 653, 657 (1975), this Court said:

2. An answer to a defense interrogatory concerning future loss of earning capacity stated: "Unknown, no future loss anticipated...."

3. The remaining kidney was healthy.

4. Prior medical expenses incurred by the husband-plaintiff on account of his wife were in the amount of $7,536.45.

The law requires not merely conjecture, but rather sufficient data from which the damages can be assessed with reasonable certainty. *Macan v. Scandinavia Belting Company*, 264 Pa. 384, 107 A. 750 (1919). This view was followed in *Carroll v. Pittsburgh Railways Company*, 200 Pa.Super. 80, 187 A.2d 293 (1962), where the court stated: "Loss of earning power and its amount must appear by proper and satisfactory proof and not be left to conjecture." 200 Pa.Super. at 84, 187 A.2d at 295. There must be evidence upon which a jury's conclusion may be based. *Smith v. Bell Telephone Company of Pennsylvania*, 397 Pa. 134, 153 A.2d 477 (1959). Since clearly in this case the jury was permitted, by speculation and conjecture, to determine wage loss, we have no difficulty in declaring error in its submission.

The "plaintiff must establish that [her] economic horizon has been shortened." *O'Malley v. Peerless Petroleum, Inc.*, 283 Pa.Super. 272, 280, 423 A.2d 1251, 1255 (1980). If a plaintiff proves that his or her ability to perform the duties of employment has been impaired, a jury can award damages for loss of future earning power even though the loss has not been translated by evidence into a precise monetary figure. See: *Pratt v. Stein*, 298 Pa.Super. 92, 133–135, 444 A.2d 674, 696–697 (1982). However, in order for a jury to be permitted to consider a future loss of earning power, it is necessary that there be competent evidence of the likelihood that disability will continue in the future. Evidence that permanent injury has been sustained is not equivalent to evidence that future earning capacity has been impaired. *Carroll v. Pittsburgh Railways Co.*, 200 Pa.Super. 80, 84, 187 A.2d 293, 295 (1962). There must be some evidence from which a jury can reasonably infer that earning power will probably be reduced or limited in the future. See: *Baccore v. Mennella*, 246 Pa.Super. 53, 55–56, 369 A.2d 806, 807 (1976). In this case there was none; and, as we have observed, the wife-plaintiff's work record suggested no basis for finding that there would be a future loss. This error was compounded when the trial

court instructed the jury that the wife-plaintiff had a working life expectancy of 11.3 years. There was no evidence of this fact. Life expectancy tables had not been offered or received in evidence and there had been no other evidence or agreement to support the court's instruction.

Similarly, a jury will not be permitted to speculate about future medical expenses when there is no evidence that future expenses will be incurred. Here, there was evidence that Mrs. Kearns had lost a kidney and feared the consequences of losing the other. This was a proper consideration in making an award of damages. Whether she would ever incur future medical expenses because of this condition, however, was wholly speculative. There simply was no evidence one way or the other. The mere possibility of future damages was insufficient. Because an award of future medical expenses could not possibly have been based on anything but pure speculation, it was error to instruct the jury that an award for future medical expenses should be made to the husband-plaintiff. See: *Greenburg v. McCabe,* 453 F.Supp. 765 (E.D.Pa.1978), *aff'd,* 594 F.2d 854 (3rd Cir.), *cert. denied,* 444 U.S. 840, 100 S.Ct. 78, 62 L.Ed.2d 51 (1979). Compare: *Berman v. Philadelphia Board of Education,* 310 Pa.Super. 153, 456 A.2d 545 (1983) (where patient's doctor testified to anticipated need in ten to twelve years to recap damaged teeth and to the estimated cost of replacing caps, jury could properly make award therefor); *O'Malley v. Peerless Petroleum, Inc., supra* (recovery permitted where patient's physician testified to approximate cost of plastic surgery to restore damaged ears at $10,600 and likelihood that patient would elect to undergo such surgery); *Pratt v. Stein, supra* (ample evidence for jury to award future medical expenses based on (a) continuing need for chiropractic treatment due to permanent nature of patient's disability and (b) cost of past chiropractic treatment).

The liability issue in this case was capably tried by able counsel. The plaintiffs commendably conceded in answers to pre-trial interrogatories that they did not anticipate a loss

of future earning capacity and identified no anticipated future medical expenses. At trial, they made no effort to prove that Mrs. Kearns' loss of a kidney would produce a future loss of earnings or additional medical expenses. Mrs. Kearns, in fact, testified that she had returned to work more than five years prior to trial at the same salary she had been receiving prior to her hospitalization. We are unable to comprehend, under these circumstances, why the trial court overruled appellants' objections and nevertheless instructed the jury that plaintiffs were entitled to recover damages for loss of future earning power and future medical costs. Because this was clearly error, we are compelled to reverse and remand for a new trial. Because the issue of liability has been fairly litigated, however, the new trial should be limited to the issue of plaintiffs' damages.

Reversed and remanded for a new trial limited to damages. Jurisdiction is not retained.