**Bersinger v. Petree**

*Leonard Ross,* for plaintiff.
*Robert Hammond,* for defendant.

KELTON, *J.,* June 25, 1986—At issue in this case is whether it was error to admit evidence of a defendant-driver's intoxication when defendant's counsel has admitted his client's negligence and that this negligence caused, at least, some injury to plaintiff. Because we concluded that the evidence was relevant to the jury's determination of the severity of the impact between defendant's and plaintiff's vehicles, we find no error.

Plaintiff brought this action for damages sustained when his pickup truck was struck by defendant's vehicle on September 24, 1981. Plaintiff had stopped on Bensalem Boulevard near Chapman Lane in Bensalem Township, Bucks County, where a school bus was unloading children. Defendant failed to stop and drove his vehicle directly into the rear of plaintiff's pickup. Pretrial, defendant admitted that his negligence had caused the accident. However, defendant did not agree as to the manner in which this accident occurred and also maintained that plaintiffs had not suffered any damages. The jury returned a verdict in favor of plaintiffs in the amount of $40,000. Defendant filed a motion for new trial solely on the issue of damages. We denied the motion and entered judgment on the verdict. Defendant has appealed our decision to the Superior Court. Defendant has briefed and raised the following issues:

1. Whether the court erred in allowing testimony as to defendant's intoxication at the time of the accident;

2. Whether the jury verdict was against the weight of the evidence, was contrary to the court's

instructions, or was a direct result of prejudicial testimony of his intoxication;

3. Whether the court erred in not allowing the chart notes of plaintiff's family physician to go out with the jury; and

4. Whether the court erred in the manner in which it responded to a jury question during deliberation.

We will address the issues seriatim.

Defendant first contends that because he had admitted liability pretrial, the admission of evidence relating to his intoxication and unfitness to drive was in error.

It is well settled that when recklessness or carelessness is at issue, proof of intoxication is relevant and admissible when it establishes unfitness to drive. Fisher v. Dye, 386 Pa. 141, 125 A.2d 472 (1956), Emerich v. Carson, 325 Pa. Super. 308, 472 A.2d 1133 (1984). However, mere hints of drinking are inadmissible as being unduly prejudicial. See, e.g., Sentz v. Dixon, 224 Pa. Super. 70, 302 A.2d 434 (1973), and Billow v. Farmers Trust Co., 438 Pa. 514, 517, 266 A.2d 92, 93 (1970).

We do not interpret Fisher v. Dye and its progeny to hold, as defendant suggests, that evidence of intoxication is *only* admissible when carelessness or recklessness is at issue. Rather, we interpret these cases to mean that evidence of alcohol consumption may be relevant in an automobile accident case (1) when the probative value of this evidence will outweigh any prejudicial effect; (2) when the proponent of this evidence can show through competent evidence that, as a result of this alcohol consumption, one has become unfit to drive; *and* (3) when such unfitness is relevant to *some* disputed factual issue.

Under our facts, we find that the probative value of evidence of defendant's intoxication outweighs any prejudicial effect this evidence may have had. It is well established that the fundamental consideration in determining the admissibility of evidence is whether the proffered evidence is relevant to the fact sought to be proved. Evidence is relevant if it tends to make a fact at issue more or less probable. See Martin v. Soblotney, 502 Pa. 418, 466 A.2d 1022 (1983).

In the present case, defendant maintained at trial that plaintiff husband's only damage sustained as a result of this accident was a small cut over his eye. Plaintiffs, however, sought to prove that, due to the violent force of impact, plaintiff husband's injuries, and most particularly the permanent damage to his lower back, were a direct result of the collision. Thus, defendant's physical ability to see a stopped school bus and other vehicles 200 feet ahead, his ability to react to the bus and its flashing lights and his ability to decelerate before striking plaintiff's truck were all relevant for the jury's consideration in determining defendant's speed at the instant of impact.

Plaintiff's treating physician, Dr. Joseph M. McGuckin, an orthopedic surgeon, testified that based upon the history plaintiff gave him, including the manner in which the accident occurred, and his examination and treatment of plaintiff, it was his opinion that plaintiff's back and neck injuries are a result of the initiating event, meaning the amount of trauma received and one's physical condition. He stated that:

"The higher the trauma and the worse shape we're in, the worse we're going to do. If you have a high trauma and you're in pretty good shape, you

would do better . . . ." (Video deposition of May 15, 1985 at 29-30.)

Plaintiff testified that when defendant's vehicle struck the rear of his pickup truck, his truck was pushed into a vehicle in his front and his head was thrown forward then backwards. He stated that he first hit the rearview mirror, which caused a cut above his eye, and then struck his head on the rear window, which forced the glass out of its molding. He then testified that defendant's vehicle spun around and struck his truck near the left rear tire, which then pushed him across the road and into the guardrail. He stated that with the second impact, he was thrown forward and then diagonally across the cab of the truck and onto the floor underneath the dashboard.

In contrast, defendant's testimony at trial was that plaintiff had caused the accident by cutting across traffic and driving into his lane. He stated that he hit plaintiff's pickup truck only once, and that plaintiff's testimony at trial was untruthful. Defendant also testified over his counsel's objection that he had had two beers for lunch at 12:00 p.m., that after work at 2:00 p.m. he consumed four more beers at two different taverns, and that immediately before the accident he had drank a quart of beer while driving.

The testimony of Frederick J. Goldstein, who holds a Ph.D. in pharmacology and is professor of pharmacology at the Philadelphia College of Pharmacy and Science, was admitted by stipulation. Dr. Goldstein stated that, based upon the fact that a breathalyzer test performed on defendant at 4:55 p.m. on the day of the accident indicated a blood-alcohol content of .19 percent, and based upon defendant's weight, he opined that defendant's blood-

alcohol level at the time of the accident was between .1675 and .2035 percent. He also testified that, at a blood-alcohol level of .15 percent, a person will exhibit sedation, confusion and impairment of muscle coordination and reaction time, and that these impaired skills would prevent the safe operation of a motor vehicle. He concluded that, in his opinion, within a reasonable degree of scientific certainty, defendant was incapable of satisfactorily operating his vehicle at the time of the accident.

Defendant argues that the severe anti-drunk driving laws enacted in Pennsylvania, the formation of groups such as Mothers Against Drunk Driving, and television shows such as "60 Minutes" all evidence an inherent prejudice against drunk driving in the public at large. Thus, he argues that evidence of defendant's intoxication was introduced solely to inflame the jury. We totally reject defendant's argument that the fact of his intoxication must somehow be hidden in a protective cocoon from the jury solely because the public at large looks with disfavor on his actions. Instead, we conclude that evidence of alcohol consumption and unfitness to drive is determined to be relevant and necessary on the issue of the physical violence suffered by plaintiff at time of impact.

Defendant also contends that the facts of this case do not support the jury verdict. A jury's verdict will not be overturned unless it is so contrary to the evidence that it shocks the trial court's sense of justice. Bortner v. Gladfelter, 302 Pa. Super. 492, 448 A.2d 1386 (1982).

In this case, the jury awarded plaintiffs Mr. and Mrs. Bersinger $40,000 in damages for [Mr. Bersinger's] pain and suffering and related items of noneconomic detriment, and [Mrs. Bersinger's] loss of consortium. Mr. Bersinger testified as to the pain

he experiences in his lower back as a result of his accident and how it has affected his work and family life. He stated that back pain has caused him to leave a very promising job at Economic Laboratories, Inc., to work at a less demanding job as a manager of a plumbing supply house. He testified as to his inability to help with the work at home and the friction this has caused between himself and his wife. He stated that he is unable to lift his two young children and doubts if he will be able to participate in any physically taxing activities with them in the future. He stated that due to his accident he is unable to socialize, play sports or hunt as he has done in the past.

Mrs. Bersinger testified that due to her husband's injuries, a great portion of the household chores had become her responsibility, but that prior to the accident she and her husband had shared these chores equally. She stated that at the time of trial, she still performed all outside yard work which is too strenuous for her husband.

Clearly, plaintiffs suffered some injury as a direct result of the accident, but there was a genuine issue of fact as to how much. We believe that the resolution of these disputed matters was clearly for the jury and was fairly resolved by them. Applying the post-trial review standards as to verdict adequacy set forth in Bortner v. Gladfelter, supra, we believe that the verdict bears a reasonable resemblance to the actual damages proved, and we do not believe we should substitute our judgment for the jury, even assuming, arguendo, that our judgment would be different.

We likewise reject defendant's contention that we erred in not allowing defendant's exhibit D-2, medical records of Dr. Vassalluzzo, to go out with the jury. The general rule in Pennsylvania is that it is

within the discretion of the trial court to determine whether documentary evidence properly admitted, with the exception of depositions and transcript testimony, shall be sent out with the jury. Wilson v. Pennsylvania Railroad, 421 Pa. 419, 432, 219 A.2d 666, 673 (1966). Kearns v. Clark, 343 Pa. Super. 30, 38, 493 A.2d 1358, 1362 (1985). As in Kearns v. Clark, supra, our decision not to allow the records of Dr. Vassalluzzo to be taken into the deliberating room during the jury's deliberations involved a concern that the medical terms and notations contained in this document would be subject to misinterpretation in the absence of an explanation. We find no error.

Finally, we reject defendant's contention that we erred in the manner in which we responded to the jury's question during deliberation. Where a jury returns on its own motion indicating confusion, the court has the duty to give such additional instructions to the law as the court deems necessary to clarify the jurors' doubt or confusion. Reilly v. Poach, 227 Pa. Super. 522, 323 A.2d 50 (1974). While the fact that a question was asked would indicate that some confusion existed, a new trial should not be ordered unless it can be shown that the trial error caused an incorrect result and confusion worked to the detriment of the losing party. Worthington v. Oberhuber, 419 Pa. 561, 563, 215 A.2d 621 (1966). Our jury returned a question as to whether or not they should "consider future earning power." We responded in the negative. Defendant does not contend that this answer was incorrect per se, but rather, he maintains that our explanation placed undue emphasis on other future damages which *were* recoverable. We believe that the answer given to the jury was appropriate and permitted the jury to distinguish between nonrecoverable future

earnings and recoverable future loss of life's pleasures.

For the foregoing reasons, we entered our order.

## ORDER

And now, this April 16, 1986, defendant's motion for new trial is denied and judgment is hereby entered in favor of plaintiff on the molded verdict of $48,640 plus costs and interest from December 5, 1985.