Wendy GLOFFKE, Appellant,

v.

Melvin ROBINSON and Lehigh and Northampton Transportation Authority, a/k/a Lanta, n/k/a Lanta–Metro.

Commonwealth Court of Pennsylvania.

Argued July 10, 2002.

Decided Sept. 5, 2002.

---

4. Appellee's request for counsel fees and costs    is hereby denied.

Richard J. Orloski, Allentown, for appellant.

Richard L. Orwig, Reading, for appellees.

BEFORE: McGINLEY, Judge, and FRIEDMAN, Judge, and KELLEY, Senior Judge.

OPINION BY Judge McGINLEY.

Wendy Gloffke (Gloffke) appeals the order of the Court of Common Pleas of Lehigh County (trial court) that denied Gloffke's motion for post-trial relief in which she requested a new trial after a jury determined that Gloffke did not sustain a permanent loss of bodily function after the vehicle in which she was a passenger was struck by a Lehigh and Northampton Transportation Authority (LANTA) bus.

On December 26, 1997, Gloffke was a passenger in a 1991 Ford Festiva operated by her husband that was heading north on 19th Street and was waiting to make a left turn onto Washington Street in the City of Allentown. A LANTA bus driven by Melvin Robinson (Robinson) struck the vehicle from behind. Glass from the windows and rear windshield of the Festiva became embedded in her face and eyes. Gloffke also alleged she experienced pain in her neck, face, left elbow, and body.

Gloffke commenced an action on the basis that she sustained severe and permanent injuries to her neck, face, left elbow, and body as a result of Robinson's negligence in the December 26, 1997, accident.

On November 16, 2000, LANTA and Robinson (collectively, the Defendants) moved for summary judgment and alleged that Gloffke failed to demonstrate permanent loss of bodily function and that Gloffke failed to state a claim for which relief could be granted under the Judicial Code, 42 Pa.C.S. §§ 8541–8553. On January 10, 2001, the trial court denied the motion for summary judgment.

On February 21, 2001, a panel of arbitrators heard the case and entered an award in favor of Defendants. Gloffke appealed to the trial court.

The trial court conducted a trial on October 22, and 23, 2001. At the start of the proceedings, Gloffke's counsel advised the trial court that the Defendants had Dr. Richard Close, a neurosurgeon, examine Gloffke but the Defendants did not obtain a written report from Dr. Close despite repeated demands by Gloffke's counsel for

a report under Pa.R.C.P. No. 4010(b)(1)[1]. Gloffke's counsel indicated that he intended to argue that the Defendants' failure to call Dr. Close indicated that Dr. Close's findings were consistent with those of Gloffke's physician. Gloffke's counsel sought the benefit of an adverse inference. Defense counsel objected and explained that he elected to utilize the services of a neurosurgeon only because Gloffke's counsel represented to him that Gloffke would call a neurosurgeon. When it turned out that Gloffke never deposed a neurosurgeon, Defense counsel told Dr. Close that he did not need a report. Gloffke's counsel denied that he made such a representation. The trial court accepted the position of Defense counsel and sustained the Defendants' objection.

Gloffke testified that after the accident she was "pretty much immobilized for the next month." Notes of Testimony, October 22, 2001, (N.T. 10/22/01) at 56; Reproduced Record (R.R.) at 80a. Gloffke explained that she was immobilized during the winter break from her employment at Cedar Crest College. When Gloffke's counsel asked Gloffke if she normally obtained alternate employment during the winter break Defense counsel objected on the ground that there was no documentation or foundation for any loss of earnings.

Gloffke's counsel stated that he needed the testimony not for loss of earnings but to establish loss of function and the severity of her condition. The trial court sustained the objection. N.T. 10/22/01 at 57–58; R.R. at 80a–81a. Later, Gloffke testified that she changed jobs but did not suffer a loss in salary. N.T. 10/22/01 at 76; R.R. at 100a.

Gloffke presented the videotaped deposition testimony of Mark Cerciello, M.D. (Dr. Cerciello), board-certified in orthopedic medicine. Dr. Cerciello examined Gloffke in February 26, 2001. Dr. Cerciello diagnosed Gloffke with disc herniations at C–5/C–6 and at C–6/C–7 and a loss of continuity of a ligament that holds the C–5/C–6 disk in place. Notes of Testimony, October 23, 2001, (N.T. 10/23/01) at 45; R.R. at 171a. Dr. Cerciello testified that the herniated disks were caused by the December 26, 1997, accident. N.T. 10/23/01 at 49; R.R. at 175a.[2]

The Defendants presented the deposition testimony of David N. Bosacco, M.D. (Dr. Bosacco), a board-certified orthopedic surgeon. Dr. Bosacco examined Gloffke on June 27, 2000. Dr. Bosacco diagnosed Gloffke with a cervical strain, thoracic strain, a contusion of the left elbow, and tendinitis of the left elbow. Dr. Bosacco

---

**1.** Pa.R.C.P. No. 4010(b)(1) provides:

If requested by the party against whom an order is made under this rule or the person examined, the party causing the examination to be made shall deliver to the requesting party or person a copy of a detailed written report of the examiner setting out the examiner's findings, including results of all tests made, diagnoses and conclusions, together with like reports of all earlier examinations of the same condition. After delivery the party causing the examination shall be entitled upon request to receive from the party against whom the order is made a like report of any examination, previously or thereafter made, of the same condition, unless, in the case of a report of examination of a person not a party, the party shows inability to obtain it. The court on motion may make an order against a party requiring delivery of a report on such terms as are just, and if an examiner fails or refuses to make a report the court shall exclude the examiner's testimony if offered at trial.

**2.** When Gloffke rested, the Defendants moved for a compulsory non-suit on the basis that Gloffke failed to establish that Gloffke suffered a permanent bodily impairment as required under the Judicial Code. The trial court ruled that the question was for the jury and denied the motion.

determined that all of these conditions had resolved. Dr. Bosacco also diagnosed Gloffke with degenerative disc disease of the neck, spasmodic myositis relating to scoliosis, and tendinitis of the elbows. Dr. Bosacco opined that these conditions were unrelated to the accident and that Gloffke suffered no loss of bodily function. N.T. 10/23/01 at 122–124; R.R. at 248a–250a. Dr. Bosacco also examined Gloffke on June 26, 2001, and made essentially the same diagnosis. He did find cervical disk disease at C–5/C–6 and C–6/C–7 which he concluded was unrelated to the December 26, 1997, accident. N.T. 10/23/01 at 135; R.R. at 261a.

Over Gloffke's objection, the trial court submitted the question to the jury whether Gloffke sustained a permanent loss of a bodily function and instructed the jury that in order for Gloffke to receive compensation she must have sustained a permanent loss of a bodily function. While it deliberated, the jury questioned whether Gloffke wore a seat belt. The trial court instructed the jury to recall the evidence presented. Gloffke's counsel requested that the medical records, which indicated Gloffke used a seat belt, be taken into the jury room. The trial court denied the request.

The jury determined that the Defendants were negligent and that their negligence was a substantial factor in Gloffke's harm. However, because the jury found that Gloffke did not sustain a permanent loss of bodily function there was no recovery.

In her motion for post-trial relief, Gloffke argued that she was entitled to a new trial based on a violation of due process and equal protection, inadequate jury instructions, and alleged errors of law that

occurred during the trial. The trial court denied the post-trial motion.

Gloffke contends that she is entitled to a new trial where the jury found that the negligence of the Defendants proximately caused Gloffke's injuries yet failed to award any damages because Pennsylvania arbitrarily, capriciously, and unconstitutionally has two different statutory standards regarding persons injured due to the negligence of bus drivers employed by different government entities.

■ Gloffke contends that the trial court abused its discretion when it did not give the jury an adverse inference charge with respect to Dr. Close. Gloffke also asserts that the trial court's determination not to send the medical records into the jury room was erroneous and highly prejudicial, especially where: 1) Gloffke had to establish a "permanent loss of bodily function"; and 2) the jury asked whether Gloffke was wearing a seat belt. Lastly, Gloffke contends that the trial court excluded highly relevant evidence concerning "permanent loss of bodily function" when it restricted Gloffke's testimony.[3]

Initially, Gloffke argues that there is no logical reason why the sovereign immunity provision requires only pain and suffering to recover while the local governmental immunity provision allows recovery for pain and suffering only if there is permanent loss of bodily function or permanent dismemberment. Therefore, she argues that this limitation on damages under Section 8553(c)(2) of the Judicial Code, 42 Pa.C.S. § 8553(c)(2), should be declared unconstitutional under both the Due Process and Equal Protection Clauses of the United States and Pennsylvania Constitutions. Gloffke asserts this is a violation of

---

**3.** Our review of post-trial motions is limited to a determination of whether the trial court abused its discretion or committed an error of

law. *Ward v. Truscello,* 137 Pa.Cmwlth. 349, 586 A.2d 478 (1991).

the Equal Protection Clause because there is no rational basis for differentiating between people injured by bus drivers who drive for different governmental entities.

Gloffke asserts, correctly, that if she were injured by a SEPTA bus, she would have to meet the vehicle exception of the Judicial Code pertaining to sovereign immunity, 42 Pa.C.S. § 8522(b)(1)[4], because SEPTA is considered a state rather than local authority. Under Section 8528 of the Judicial Code, 42 Pa.C.S. § 8528, damages are recoverable for pain and suffering.

LANTA, the parties agree, is classified as a local agency. The vehicle exception to governmental immunity contained in Section 8542(b)(1) of the Judicial Code, 42 Pa.C.S. § 8542(b)(1), provides:

> **(b) Acts which may impose liability.—** The following acts by a local agency or any of its employees may result in the imposition of liability on a local agency:
>
> (1) *Vehicle Liability.*—The operation of any motor vehicle in the possession or control of the local agency, provided that the local agency shall not be liable to any plaintiff that claims liability under this subsection, if the plaintiff was, during the course of the alleged negligence, in flight or fleeing apprehension or resisting arrest by a police officer or knowingly aided a group, one or more of whose members were in flight or fleeing apprehension or resisting arrest by a police officer. As used in this paragraph, 'motor vehicle' means any vehicle which is self-propelled and any attachment thereto, including vehicles operated by rail, through water or in the air.

Of more importance, the limitation on damages section, Section 8553(c)(2)(ii) of the Judicial Code, 42 Pa.C.S. § 8553(c)(2)(ii) provides:

> **(c) Types of losses recognized.—**Damages shall recoverable [sic] only for:
>
> . . . .
>
> (2) Pain and suffering in the following instances:
>
> . . . .
>
> (ii) only in cases of permanent loss of a bodily function or permanent dismemberment where the medical and dental expenses referred to in paragraph (3) are in excess of $1,500.

█ The trial court found the statute constitutional:

> The Commonwealth Court of Pennsylvania and the Pennsylvania Supreme Court previously have addressed challenges to the constitutionality of the theories of immunity protections in tort actions and have found governmental and sovereign immunity to be legitimate and appropriate rights for local and state agencies, respectively . . . .
>
> . . . .
>
> Furthermore, this Court notes that a party challenging the constitutionality of a statute has the burden of rebutting the presumption of constitutionality by clear, palpable and plain demonstration that the statute violates a constitutional provision. . . . Moreover, to succeed on an equal protection challenge, the plaintiff must show that the allegedly offensive categorization insidiously discrimi-

---

4. Section 8522 of the Judicial Code, 42 Pa. C.S. § 8522(b)(1), provides:

**(b) Acts which may impose liability.—**The following acts by a Commonwealth party may result in the imposition of liability on the Commonwealth and the defense of sovereign immunity shall not be raised to claims for damages caused by:

(1) **Vehicle Liability.**—The operation of any motor vehicle in the possession or control of a Commonwealth party. As used in this paragraph, 'motor vehicle' means any vehicle which is self-propelled and any attachment thereto, including vehicles operated by rail, through water or in air.

nates against a disfavored group.... A legislative classification which does not discriminate against any suspect class, nor infringe on any fundamental right, will be upheld from equal protection challenge as long as it bears a rational relationship to a legitimate state interest....

In the instant case, the Plaintiff makes no claim that she belongs to a specifically protected class. Furthermore, the entitlement to monetary damages because of another person's negligence has not been held to be a fundamental right.... Finally, the Pennsylvania governmental and sovereign immunity provisions are related to a legitimate state interest in that it furthers the legislature's goal of reducing costs to state and local agencies. Governmental and sovereign immunity have been under judicial scrutiny on numerous occasions and the Commonwealth Court of Pennsylvania and the Pennsylvania Supreme Court have deemed such to be a valid and constitutional exercise of legislative power. (Citations omitted).

Trial Court Opinion, January 7, 2002, (Opinion) at 5–6; R.R. at 16a–17a. This Court agrees with the trial court that Gloffke failed to sustain an equal protection challenge.

With respect to her due process challenge, Gloffke asserts that the distinction between persons injured by buses operated by different governmental authorities violates her right to due process under the Pennsylvania and United States Constitutions because it restricts her access to the courts.

In *Brown v. Quaker Valley School District*, 86 Pa.Cmwlth. 496, 486 A.2d 526 (1984), Adrienne Brown, a student at Quaker Valley High School, injured her knee in physical education class. She filed a personal injury suit against Quaker Val-

ley School District (the District) and the physical education teacher, Kenneth Johns (Johns). The District and Johns raised the affirmative defense of governmental and official immunity and moved for summary judgment. The Court of Common Pleas of Allegheny County granted the motion for summary judgment and dismissed Brown's complaint. *Brown*, 486 A.2d at 527. On appeal to this Court Brown asserted that the governmental and official immunities contained in the Judicial Code offended the Fourteenth Amendment to the United States Constitution as well as Article I, Section 11 and Article III, Section 18 of the Pennsylvania Constitution. Brown asserted that such immunities denied her access to the courts in violation of Article I, Section 11 and unconstitutionally limited damages in violation of Article III, Section 18. This Court determined:

Our Supreme Court has already upheld the constitutionality of governmental tort immunity.... In a prior decision, the Supreme Court held that our constitution is expressly neutral on the issue of sovereign immunity—it neither requires nor prohibits it.... Brown's federal constitutional claim must likewise fail in light of the long history of recognition of the doctrine of sovereign immunity by the federal courts.... As we have determined that the statutory provisions granting governmental immunity to the District and official immunity to Johns are constitutional and act as a bar to Brown's action, we need not address her challenge to the constitutionality of Section 8553 of the Judicial Code, 42 Pa.C.S. § 8553, which limits the amount of damages which may be recovered against a government agency or official.

Having found that the District and Johns are properly entitled to immunity under the provisions of the Judicial

Code, and those provisions are constitutional, we affirm the common pleas court's order which granted summary judgment to the defendants and dismissed Brown's complaint.

*Brown,* 486 A.2d at 528.

This case is similar to *Brown* in that Gloffke challenges a portion of Section 8553 as did Brown. In *Brown,* this Court determined that the governmental immunity provisions of the Judicial Code were constitutional and that it did not have to address Brown's challenge to Section 8553 of the Judicial Code. Here, Gloffke is also challenging Section 8553˙ of the Judicial Code. Gloffke concedes that Section 8542 of the Judicial Code is the relevant section. Because this Court has already ˙ determined that the provisions that address immunity are constitutional, this Court need not revisit the same challenge. The trial court so found Section 8553 is constitutionally sound.

Gloffke next contends that the trial court abused its discretion when it exempted the Defendants from the mandatory requirements of Pa.R.C.P. No. 4010(b)(1) where Defendants did not provide Gloffke's counsel a copy of Dr. Close's IME report, and the trial court precluded Gloffke from testifying about Dr. Close's IME, then restricted any cross-examination of Dr. Bosacco concerning˙ Dr. Close's IME, and also prevented Gloffke from creating a factual record that supported an adverse inference charge.[5]

To summarize, Gloffke argues that the trial court committed an error of law when it did not require the Defendants to produce the report of Dr. Close and thereby deprived Gloffke of the opportunity to introduce evidence to support an adverse inference charge.

Under Pa.R.C.P. No. 4010(b)(1), a party examined is entitled upon the party's request to a copy of a detailed written report of the examiner. The party requesting the report may move to have the trial court order the delivery of a report. If an examiner fails or refuses to make a report, the trial court shall exclude the examiner's testimony if offered at trial. Gloffke speculates that no report was prepared because Dr. Close's opinion mirrored that of Dr. Cerciello, Gloffke's medical witness.

■ With respect to an adverse inference, the general rule is:

[W]here evidence which would properly be part of a case is within the control of the party in whose interest it would naturally be to produce it, and, without satisfactory explanation he fails to do so, the jury may draw an inference that it would be unfavorable to him.

*Clark v. Philadelphia College of Osteopathic Medicine,* 693 A.2d 202, 204 (Pa.Super.1997), *quoting Haas v. Kasnot,* 371 Pa. 580, 584–585, 92 A.2d 171, 173 (1952).

■ The decision whether to tell the jury that an adverse inference may be drawn from the failure of a party to produce some circumstance, witness, or document lies within the discretion of the trial court and will not be reversed absent manifest abuse. *Clark,* 693 A.2d at 204, *citing O'Rourke on Behalf of O'Rourke v. Rao,* 411 Pa.Super. 609, 602 A.2d 362 (1992). Here, essentially, the trial court determined that the Defendants did not ask Dr. Close to prepare a report because Gloffke chose not to be examined by a neurologist of her own choosing. The trial court found this explanation adequate and chose not to

---

**5.** Gloffke also asserts that the trial court required her to submit to three separate IME's by two different doctors. Gloffke does not address this issue in her brief, and it must be considered abandoned.

charge the jury with regard to adverse inference. The trial court also determined that Gloffke requested a copy of Dr. Close's expert report but never filed a motion to compel to obtain the report from Dr. Close. Further, Gloffke did not seek to obtain through her own discovery any information from Dr. Close. Under the circumstances, there is no basis for this Court to conclude that trial court abused its discretion in this regard.[6]

■ Next, Gloffke contends that the trial court's determination that the jury could not review, during deliberation, Gloffke's medical records that were introduced into evidence was erroneous and highly prejudicial where there was a question of permanent loss of bodily function and the jury asked if Gloffke was wearing a seat belt.

The trial court determined:

This Court recognizes that a jury's ability to take evidence into the deliberation room is purely within the discretion of the trial court. *Cervone v. Reading*, 371 Pa.Super. 279, 287, 538 A.2d 16, 20 (1988), *allocatur denied*, 520 Pa. 586, 551 A.2d 213 (1988). During its deliberations, the jury did not seek additional information relative to the Plaintiff's medical treatment. The only supplemental fact that the jury sought dealt with whether the Plaintiff wore her seat belt at the time of the accident on December 26, 1997. During the trial, no evidence had been presented on this issue. At this juncture, the Plaintiff renewed her request to have the jury review the medical records in the deliberation room for information regarding whether the Plaintiff wore her

seat belt. Because there was no testimony offered at the time of trial as it would relate to the use or non-use of her seat belt, this Court properly prohibited the jury from taking the medical records into the deliberation room. Therefore, we find that the Plaintiff is not entitled to a new trial based on this allegation of error.

Opinion at 12; R.R. at 23a. This Court agrees.

■ Finally, Gloffke contends that the trial court excluded highly relevant evidence concerning Gloffke's permanent loss of bodily function when it restricted her testimony concerning loss of wages. Gloffke asserts that such testimony was intended to show the severity of her condition.

The trial court reasoned:

[T]he record is void of testimony indicating that Plaintiff had a work restriction due to her medical condition as well as void of testimony showing that the Plaintiff was unable to perform her work as a college chemistry professor during the regular school year. (N.T. 10/23/01, p. 124). Furthermore, the Plaintiff did not present any evidence to demonstrate that she worked during the summer months in the years prior to the accident.... As the Pennsylvania Superior Court articulated in *Kearns v. Clark*, 343 Pa.Super. 30, 40, 493 A.2d 1358, 1363 (1985), wage losses cannot be presented to the jury on mere conjecture. Consequently, this Court determined that testimony regarding the Plaintiff's wage loss was improper under the circumstances. (Footnote omitted).

---

6. The trial court denied Gloffke's attempt to testify concerning the IME conducted by Dr. Close. This Court finds no error with that decision. Similarly, there was no reason for Dr. Bosacco to testify regarding Dr. Close's IME because nothing in the record indicates

that Dr. Bosacco had any knowledge of the examination or its findings. The trial court sent the critical issue of the credibility of the medical witnesses to the jury. This Court will not second guess a reasonable exercise of discretion by the trial court.

Opinion, at 13; R.R. at 24a. This Court finds no error with the trial court's conclusion that Gloffke failed to properly establish a foundation for wage loss as a means to prove that Gloffke suffered a permanent loss of bodily function.[7] This wage loss occurred over the winter break following the accident.[8] Gloffke admitted that she returned to work and subsequently took a non-teaching job because it was easier for her physically but did not suffer a loss of wages. N.T. 10/22/01 at 75–78; R.R. at 99a–102a. There was no testimony that any physician placed a restriction on Gloffke's work activities. Further, it is unclear how the possible temporary loss of wages during approximately a one month period could prove a permanent loss of a bodily function.

Accordingly, we affirm.

### ORDER

AND NOW, this 5th day of August, 2002, the order of the Court of Common Pleas of Lehigh County in the above-captioned matter is affirmed.

---

**7.** Gloffke points to *Washington v. Baxter,* 553 Pa. 434, 719 A.2d·733 (1998) for support. However, *Washington* is distinguishable because Kenneth Washington (Washington), a limited tort elector who instituted an action for non-economic losses arising out of an automobile accident, stated in a deposition that he missed four or five days of work at his full time job and was absent for two months from a job where he worked three or four hours per week. Our Pennsylvania Supreme Court took into account this claim of lost wages when it determined that the Superior Court properly affirmed the Court of Common Pleas of Lancaster County's grant of summary judgment.

Unlike in *Washington,* Gloffke did not make any claims for wage loss or present any information regarding wage loss until trial. Gloffke failed to present any evidence regarding a work restriction based on her medical condition or that she worked in the summer prior to the accident. There was no evidence with respect to wage loss other than Gloffke's own testimony.

**8.** The trial court referred to lost wages in the summer months in its opinion although the objection was sustained with respect to lost wages during the winter break following the accident. However, the same reasoning applies to lost wages in the summer months.