Unit Vending Corporation, Appellant, v. Tobin Enterprises, Inc.

472

Argued December 14, 1960. Before RHODES, P. J., GUNTHER, WRIGHT, WOODSIDE, ERVIN, WATKINS, and MONTGOMERY, JJ.

*Melvin L. Fuhrman,* with him *Fuhrman and Furman,* for appellant.

*Allen J. Levin,* and *Folz, Bard, Kamsler, Goodis & Greenfield,* for appellee, submitted a brief.

*Jerome A. O'Neill,* for appellees.

OPINION BY ERVIN, J., March 22, 1961:

These three appeals were taken from the action of the court below in opening two amicably confessed judgments "so that evidence may be offered to ascertain the actual damages suffered by the plaintiff." As to both judgments the court below said: "Thus the plaintiff may be unjustly enriched by assessing dam-

ages in accordance with the formula contained in the agreement. We believe that this formula cannot be sustained as liquidated damages and is in effect a penalty."

If the amount of damages assessed is subsequently adjudged unreasonable in the light of either anticipated or actual harm, the contractual provision will be voided as a penalty: Restatement, Contracts, §339; 12A PS §2-718.

The present appeals involve an interpretation of two written contracts containing authorization to enter. judgments upon breach or imminent breach of the contracts. For an understanding of the matter both contracts must be carefully studied. The two contracts are the same except as to clauses 1 and 9. The full contract as to appeal No. 329 is printed in footnote 1.[1]

---

[1] "AGREEMENT made Feb. 3rd 1959, between UNIT VENDING CORP., hereafter called 'OPERATOR' and Samuel Tobin—Martin Tobin
(Proprietor's Name)
—Tobin Enterprises, Inc. hereafter called 'PROPRIETOR,' doing business at 'LOCATION' 601 N. 52nd St. under the name of Millcreek
(Location Address)                    (Location
Cafe WITNESSETH:
Name)

"1. PROPRIETOR, in consideration of a loan of $500.00 in hand paid by OPERATOR, receipt whereof is acknowledged, intending to be legally bound, does hereby grant to OPERATOR the exclusive right to sell cigarettes through vending machines at PROPRIETOR's location address for a term of Six (6) years from the date hereof.

"Said loan shall be repaid by PROPRIETOR in     consecutive installments of not less than $5.00 weekly each and by application of commissions accruing hereunder, with interest only after maturity or default.

"2. During said term, or any renewal thereof:

"(a)  OPERATOR, or its agents, will have authority to enter the location for purposes of installing, servicing, repairing or removing OPERATOR's vending machine, contents of cigarettes or money, as often as necessary, during normal business hours.

Only paragraphs 1 and 9 of the contract as to appeals

"(b) PROPRIETOR will not sell, offer for sale or permit the sale of cigarettes at the location by any other person, firm, agency or means other than OPERATOR.

"(c) OPERATOR shall monthly pay to PROPRIETOR a commission at the rate of 3¢ per pack upon all sales made through the cigarette machine during the prior month, but such commission is subject to change by OPERATOR upon any increase in cost of cigarettes, matches or taxes.

"(d) OPERATOR shall service machine as often as necessary, keep it stocked with standard brands of cigarettes and in operating condition; but temporary or occasional inability or failure to comply with this provision shall not constitute a breach by OPERATOR hereunder.

"3. Upon expiration of the term, this Agreement shall continue in force for an additional period of one (1) year, and thereafter from year to year, unless notice of termination be given by either party to the other by registered mail at least thirty (30) days prior to expiration of the then current term.

"4. Said cigarette vending machine(s), together with contents thereof, are and shall at all times remain the property of the OPERATOR, and may be removed by it at any time without notice.

"5. PROPRIETOR will not cause, permit or attempt to remove, secrete, dispose or damage said machine or contents, nor withhold same from OPERATOR; will notify OPERATOR immediately in event same are damaged, robbed, stolen, levied or distrained upon or the business of the location is, or about to be sold, closed, or discontinued, or in the event of bankruptcy or insolvency.

"6. Said machine and contents shall at all times be at the risk of PROPRIETOR (ordinary wear excluded) who agrees to immediately pay for all loss or damage to same, from any cause, including fire, theft, vandalism or negligence.

"7. PROPRIETOR warrants that PROPRIETOR is the sole owner and operator of the principal business conducted at the location, and of the fixtures, equipment and inventory used and contained therein.

"8. In event of sale of the location business, PROPRIETOR will notify OPERATOR in advance of settlement, and of the name, address and identity of the purchaser, and agrees that the terms of said sale shall include provision for the assumption in writing of this Agreement by the purchaser, but PROPRIETOR shall not thereby be relieved of his obligation hereunder.

Nos. 335 and 336 are printed in footnote 2.[2]

"9. (a) Upon termination hereof, by expiration or otherwise, PROPRIETOR shall immediately repay the full balance of the loan then remaining unpaid.

"(b) Upon a breach of this Agreement by PROPRIETOR, or whenever in the opinion of OPERATOR a breach is imminent, OPERATOR may immediately terminate this Agreement and demand and collect from PROPRIETOR, in addition to the balance of the loan, a sum equal to the average monthly profit received by OPERATOR hereunder prior to the breach, multiplied by the number of months remaining in the unexpired original or renewal term.

"10. To enforce collection, PROPRIETOR authorizes and empowers any Attorney of any Court of Record of Pennsylvania or elsewhere, to appear for and enter judgment against PROPRIETOR for such amount as may be due or determined to be due hereon, upon Averment of Default filed, with costs of suit, release of errors, without stay of execution, and with 15% added for collecting fees, and waives the right of inquisition on any real estate or personal property that may be levied upon to collect said sum, and hereby voluntarily condemns the same, and authorizes the Prothonotary to enter said voluntary condemnation upon the Fi. Fa., and agrees that said real estate or personal property may be sold on a Fi. Fa. and waives and releases all relief from any appraisement, stay or exemption laws of any state, now in force or hereafter passed.

UNIT VENDING CORP.

. . . . . . . . . . . . . . . . . . . . . . . . . . .

Operator

By: SAMUEL (illegible)   (SEAL)

TOBIN ENTERPRISES, INC.
  MARTIN TOBIN Pres.
      Proprietor

By: SAMUEL TOBIN Vice Pre. (SEAL)
    (SEAL)       ~~#98899~~
               96871"

[2] "AGREEMENT made December 28, 1956 between UNIT VENDING CORP. hereafter called 'OPERATOR' and Leon Goodstein and Eugene
                                (Proprietor's Name)
Ciardullo hereafter called 'PROPRIETOR,' doing business at 'LOCATION'
14 N. 13th St., Phila., Penna. under the name of E & L Tavern
  (Location Address)                    (Location Name)

As to appeal No. 329 it is clear that the amount assessed as damages is in fact a penalty. The agreement as drawn in this case represents a clever attempt to secure both the penny and the cake for the appellant-plaintiff.

Paragraph 1 of this agreement provides for the making of a "loan" of $500.00 by the operator to the proprietor but then immediately provides for a repayment of this loan by the installment method. The $500.00 was supposed to be consideration paid by the operator to the proprietor for the exclusive right to sell cigarettes through vending machines at proprietor's place of business for a period of six years.

Paragraph 9(a) provides that upon the termination of the agreement the balance of the loan is to be repaid. Thus the total so-called consideration originally paid by the operator must be repaid to it.

Paragraph 9(b) provides that upon breach or imminent breach of the contract the operator may terminate the agreement and in addition to the balance of the loan may demand from proprietor "a sum equal

---

WITNESSETH:

"1. PROPRIETOR, in consideration of the sum of $200.00 in hand paid by OPERATOR, receipt whereof is acknowledged, intending to be legally bound, does hereby grant to OPERATOR the exclusive right to sell cigarettes through vending machines at PROPRIETOR'S location address for a term of five years from date hereof.

. . .

"9. Upon a breach of this Agreement by PROPRIETOR, or whenever in the opinion of OPERATOR a breach is imminent, OPERATOR may immediately terminate this Agreement and demand and collect from PROPRIETOR either:

"(a) The full consideration paid herein, or

"(b) A sum equal to the average monthly profit received by OPERATOR hereunder prior to the breach, multiplied by the number of months remaining in the unexpired original or renewal term."

to the average monthly profit received by OPERATOR hereunder prior to the breach, multiplied by the number of months remaining in the unexpired original or renewal term."

Paragraph 10 gives to the operator the right to amicably confess judgment against the proprietor for both amounts.

Even though no sale of the cigarette vending machine was ever contemplated under this agreement, it would be unjust to permit the operator to terminate the agreement and take back its vending machine and also collect damages including (1) the entire consideration of $500.00 originally loaned by it to proprietor and (2) the entire loss of future profits which it would have received if the agreement had been fully carried out.

There was no abuse of discretion in the opening of judgment in appeal No. 329.

Appeals Nos. 335 and 336 are concerned with a contract which in paragraph 1 provided for the payment of $200.00 by the operator to the proprietor for which the operator was given the exclusive right to sell cigarettes through vending machines at proprietor's place of business for a term of five years. While this agreement did not require proprietor to repay this sum of money, it did in paragraph 9 give to the operator, in the event of a breach or imminent breach, the right to terminate the agreement and collect from the proprietor (a) the full consideration paid therein (the $200.00) or (b) a sum equal to the average monthly profit received by operator thereunder prior to the breach, multiplied by the number of months remaining in the unexpired original or renewal term. The operator in assessing damages elected to collect (b) only.

Operator also removed the cigarette vending machine, as he had a right to do under §4 of the contract. The transaction did not contemplate a sale of the vend-

ing machine and the title and right to possession "at all times" remained in the operator.

The damages as assessed gave to operator the maximum amount which could be awarded by a jury if the defendants offered no evidence in mitigation of damages. As stated by the court below, "It is possible that the machine removed from the premises of the defendants was relocated in another establishment and that any loss suffered by the plaintiff may have been less than the sum set forth in the assessment of damages."

The attorney for the defendant in an amicable action may not give the plaintiff more than he would be entitled to by an adverse proceeding: *Grakelow v. Kidder*, 95 Pa. Superior Ct. 250. In the instant case the confession of judgment deprived the defendants of rights which they would have in an adversary proceeding.

Where the lessor of real estate terminates the lease and enters into possession he cannot have possession of the premises and also judgment for rent for the unexpired period of the lease: *Markeim-Chalmers-Ludington, Inc. v. Mead*, 140 Pa. Superior Ct. 490, 14 A. 2d 152. See also *Charlson's Furniture Co. v. Heigley*, 161 Pa. Superior Ct. 24, 53 A. 2d 878.

The operator should not be compensated for any profits that it might have been able to obtain by placing the machine in another location. It had the duty to minimize its damages by so doing if this were possible.

We agree with the court below "that justice and equity require the opening of the judgment so that evidence may be offered to ascertain the actual damages suffered by plaintiff." We can see no abuse of discretion by the court below.

Orders affirmed.