586 A.2d 952

**Leonard GORZELSKY and Kathy Gorzelsky, Husband and Wife**

v.

**Edward C. LECKEY, Administrator of the Estate of Mildred E. Leckey, Deceased, Appellant.**

Superior Court of Pennsylvania.

Argued Oct. 18, 1990.

Filed Feb. 8, 1991.

248

Edward C. Leckey, Pittsburgh, for appellant.

Michael W. Sahlaney, Johnstown, for appellees.

Before ROWLEY, WIEAND and FORD ELLIOTT, JJ.

ROWLEY, Judge:

On May 13, 1986, Leonard and Kathy Gorzelsky entered into a written contract ("Agreement") to purchase real estate situated at 2325 Shannon Way, Westmont Borough in Cambria County, ("Shannon Way Property") from Edward C. Leckey, Administrator of the Estate of Mildred E. Leckey, Deceased. The Shannon Way Property was only part of the Leckey estate on Shannon Way. Therefore, approval of a subdivision was required before the Shannon Way Property could be conveyed. The Agreement contained the following relevant provisions:

16. **Modified Time of Essence:** If full performance of this Agreement is not completed by [July 31, 1986], either party shall have the right after that date to declare time to be of the essence of this Agreement by giving written notice to the other party. Such notice shall contain a declaration that time is of the essence and shall fix the time, date and place of final settlement, which date may not be sooner than fifteen (15) days nor later than thirty (30) days following the effective date of giving such notice.

*   *   *   *   *   *

24(b) This Agreement is contingent upon Buyer's ability to obtain conventional mortgage financing in an amount no less than $81,450.00. . . . Buyer shall provide Seller with a copy of any Commitment within five (5) days of receipt. If Buyer shall not obtain a Commitment for such a mortgage within thirty (30) days after Buyer's acceptance of this Agreement, this Agreement shall be void and Buyer's Earnest Money shall be returned with interest earned thereon.

*   *   *   *   *   *

24(c) Seller shall take such action as shall be required, including field survey and placement of monuments, to

obtain approval of a Final Subdivision Plan by Westmont Borough for the property of Seller, which Seller shall record.

\*　　\*　　\*　　\*　　\*　　\*

25 [A]ny notices between the parties shall be in writing and may ... be mailed by certified or registered mail.... If mailed, such notice shall be deemed effectively given as of the second business day after the date of posting.

In a letter dated June 19, 1986, buyers notified seller that their mortgage had been approved. However, buyers did not enclose a copy of the mortgage commitment with the letter. On June 30, 1986, buyers entered into an agreement to sell their current residence. Pursuant to this agreement, they were obligated to deliver possession of their current residence on or before August 20, 1986. On July 22, 1986, seller submitted his subdivision plan to the Westmont Borough Planning Commission. However, the planning commission refused to act on it without prior review by the County Planning Commission. On July 25, 1986, seller telephoned buyers to notify them of this problem, and buyers told seller that they had sold their current residence and intended to close the sale on August 10, 1986.

In a letter dated July 28, 1986, buyers told seller that buyers would be ready to settle on July 31, 1986, pursuant to the Agreement. Seller told buyers that he would be unable to close at that time. In a letter dated July 31, 1986, buyers declared time to be of the essence and scheduled a final settlement for August 15, 1986. The letter also informed seller that buyers were being represented by new counsel. Buyers, buyers' counsel, and seller discussed the possibility of seller leasing the Shannon Way Property to buyers while the parties were waiting for the sale to close. However, buyers decided to lease other premises instead. On August 26, 1986, seller obtained preliminary approval of his subdivision plan form the Westmont Borough Planning Commission. On September 9, 1986, seller gave buyers notice that time was of the essence and that the closing

would be held on September 26, 1986. On that date, seller agreed to close in escrow with buyers' counsel acting as the settlement officer, and seller delivered the deed to buyers' counsel by certified mail.

The sale was finally closed on October 7, 1986, and buyers took possession of the property. The Westmont Borough Planning Commission gave final approval of the subdivision plan on October 14, 1986. During the period of August 20, 1986, when they left their former residence, through October 7, 1986, when they took possession of the Shannon Way Property, buyers incurred the following expenses: $39.40 to advertise for a place to lease; $922.00 to rent the leased premises through the end of October; $61.50 to install a phone in the leased premises; $390.00 to move from their former residence to the leased premises; and $200 in additional attorneys fees.

Buyers sued seller for damages arising from the delay in delivering possession of the Shannon Way Property. Buyers also sued seller for the cost of removing a wood pile from the property. The matter proceeded to common law arbitration. The arbitrators awarded buyers $650.00 for the removal of the wood pile. Seller appealed to the Court of Common Pleas and filed a motion for partial summary judgment with respect to the cost of removing the wood. The Court of Common Pleas denied this motion but ordered buyers to delete the paragraphs concerning the woodpile from their complaint.

Following a trial without a jury, the trial court found in favor of buyers and awarded them $482.90 for their advertising, moving and telephone installation expenses as damages incurred due to seller's breach. The trial court refused to award buyers their attorney's fees, noting that attorney's fees are generally not recoverable for a breach of contract action. The trial court also refused to award buyers their rental expenses for the leased premises, but the court concluded: "[W]hile plaintiffs are not entitled to the expenses incurred in renting alternative housing, they are entitled to the fair rental value of the property on

Shannon Way less interest on the purchase price...." (Trial Court Opinion 10/19/89 at 10, 11). The fair rental value less interest on the purchase price totalled $475.54. Thus the total damage award was $958.44. Judgment was entered on the verdict, whereupon appellant brought the instant appeal and requests a judgment n.o.v..

In reviewing the trial court's denial of a motion for judgment n.o.v., "the sole duty of the appellate court is to decide whether there was sufficient competent evidence to sustain the verdict...." *McDevitt v. Terminal Warehouse Co.*, 304 Pa.Super. 438, 442, 450 A.2d 991, 993 (1982). *See also* 10 Stand.Pa.Prac.2d, *Judgment Notwithstanding Verdict* §§ 64:3–64:6. We consider the evidence and all reasonable inferences drawn therefrom in the light most favorable to appellees, the verdict winners in this case. *Kearns v. Clark*, 343 Pa.Super. 30, 34, 493 A.2d 1358, 1360 (1985) (citations omitted). "A motion for judgment n.o.v. can properly be granted only when no two reasonable minds could differ that, as a matter of law, the party has failed to make out his case." *Id.*, 343 Pa.Superior Ct. at 35, 493 A.2d at 1358 (citations omitted). Having carefully reviewed the record and considered the arguments presented, we affirm.

Appellant first argues that the trial court erred in *sua sponte* amending appellees' complaint "to assert a new basis for recovery after trial of the case." (Appellant's Brief, at 22). However, the trial court did not amend appellees' complaint to assert a new theory of recovery. Rather, the trial court awarded appellees a measure of damages not specified in their complaint. Appellees' theory of recovery was and continues to be breach of contract due to delay in delivery of possession. At trial, appellees sought to recover the rental value of the leased premises. The trial court noted that the proper measure of damages was not the rental value of the leased premises but rather the rental value of the property which appellees were buying from appellant. *Sladkin v. Greene*, 359 Pa. 528, 530, 59 A.2d 105, 107 (1948). The trial court thus correctly awarded appellees damages based on the fair rental value

minus the interest on the purchase price of the Shannon Way Property.

■ Appellant next argues that appellees failed to mitigate damages and therefore cannot recover moving, advertising or telephone installation expenses. Appellant apparently is contending that, because appellees did not accept appellant's offer that appellees lease the Shannon Way Property for $750 a month (the amount of their mortgage payments), appellees failed to mitigate their damages. This argument is without merit. When appellees relinquished possession of their former residence, they had no way of knowing when or even if their agreement with appellant would close. Although appellees had a duty to mitigate their damages, *Unit Vending Corp. v. Tobin Enterprises,* 194 Pa.Super. 470, 168 A.2d 750 (1961), their duty to mitigate did not mandate that they pay appellant $750 per month to lease the Shannon Way Property. The trial court correctly concluded that appellees "went out and obtained alternative housing at a rent amount less than that included in [appellant's] proposal. The Court is satisfied [appellees] fulfilled their duty to mitigate damages." (Trial Court Opinion 10/19/89 at 9). The trial court further correctly held that appellees' moving, telephone installation, and advertising expenses were natural and consequential damages of appellant's breach. *Emerman v. Baldwin,* 186 Pa.Super. 561, 142 A.2d 440 (1958). (Trial Court Opinion 10/19/89 at 10).

■ Appellant next argues that appellees, themselves, caused the delay in delivery of possession because they failed to obtain a mortgage commitment within 30 days after signing the Agreement and failed to provide appellant with a copy of the commitment within 5 days after its receipt. (Agreement 5/13/86 at § 24(b)). Instead, appellees notified appellant that their mortgage had been approved in a letter dated June 19, 1986, and which appellant received on June 21, 1986. Further, appellees did not provide appellant with a copy of the mortgage commitment. Appellant contends that appellees' failure to timely obtain

and send the mortgage commitment to appellant delayed appellant's submission of a subdivision plan to the planning commission and thus caused the delay in delivery of possession. At the time appellees obtained their mortgage approval, time was not of the essence. "[W]here time is not of the essence, the mere failure to perform on the date mentioned in a contract is not per se a breach which wholly destroys the contract." *Bogojavlensky v. Logan,* 181 Pa. Super. 312, 319, 124 A.2d 412, 416 (1956). *See also, Kalina v. Eckert,* 345 Pa.Super. 220, 497 A.2d 1384 (1985) (When purchaser obtains timely assurance and notifies vendor that financing is available, vendor is not relieved of his duty to settle merely because bank failed to issue mortgage commitment). Therefore, appellant cannot rely on appellees' two day delay in notifying him of their mortgage approval to excuse his own two month delay in delivery of possession.

■ Appellant next argues that his duty to deliver possession on July 31, 1986, was suspended due to temporary impracticability. Citing the Restatement (Second) of Contracts § 264,[1] appellant contends that, by failing to finally approve the subdivision plan by July 31, 1986, the planning commission, which is a governmental body, temporarily rendered appellant's duty to deliver possession impracticable and therefore the duty was suspended. Section 264 is inapplicable in the instant case, for § 264 applies where:

[I]f supervening governmental action prohibits a performance or imposes requirements that make it impracticable, the duty to render that performance is discharged, subject to the qualifications stated in § 261. The fact that it is still possible for a party to perform if he is willing to break the law and risk the consequences does not bar him from claiming discharge. The rule stated in this Section

---

**1.** "If the performance of a duty is made impracticable by having to comply with a domestic or foreign governmental regulation or order, that regulation or order is an event the non-occurrence of which was a basic assumption on which the contract was made." Restatement (Second) of Contracts § 264.

does not apply if the language or the circumstances indicate the contrary.

Restatement (Second) of Contracts § 264, comment a. In the instant case, it was appellant's own delay in seeking planning commission approval rather than any supervening governmental regulation which caused the delay in delivery of possession. "We will not allow a party's own nonfeasance to defeat his contractual obligations." *Messina v. Silberstein,* 364 Pa.Super. 586, 591, 528 A.2d 959, 961 (1987), *alloc. denied,* 518 Pa. 619, 541 A.2d 746 (1988).

In *Messina,* the Pennsylvania Superior Court held that vendors could not avoid their duty to specifically perform a contract for the sale of land based on an alleged violation of the borough code provision which provided:

"It shall be unlawful for the owner of any land in the Borough to subdivide the same into two (2) or more lots or parcels unless and until a plan thereof shall have been prepared by a registered professional engineer or surveyor, submitted to and approved in writing."

*Messina,* 364 Pa.Super. at 590, 528 A.2d at 960. The vendors in *Messina* argued that because subdivision approval had not been obtained, the sale to the purchasers would be illegal. Therefore, the vendors refused to perform. The Court responded:

The instant sale is not necessarily illegal. It is only unlawful if the seller does not comply with the Borough Code. We will not allow a seller to avoid an otherwise legal transaction because his own failure to act is unlawful.

*Id.,* 364 Pa.Superior Ct. at 591, 528 A.2d at 961. Like the vendors in *Messina,* appellant cannot rely on his own failure to obtain subdivision approval to excuse his duty to perform.

■ Appellant next argues that appellees failed to make time of the essence, and that since time was not of the essence, damages for delay in delivery of possession cannot be recovered. The Agreement in the instant case contained a Modified Time of the Essence Clause (Agreement 5/13/86, at § 16). Appellant argues that because appellees sent a

letter on July 31, 1986, rather than after July 31, 1986 and because appellees scheduled settlement on August 15 rather than 15 days after the effective date of giving notice that time was of the essence, appellees failed to make time of the essence. In support of this contention, appellant cites *Tanenbaum v. Sears, Roebuck, & Co.*, 265 Pa.Super. 78, 401 A.2d 809 (1979). In *Tanenbaum*, an agreement of sale for the purchase of land contained no clause stating that time was of the essence, but rather provided that the vendors would be released if the vendees did not close on a certain date. The court in *Tanenbaum* held that time was not of the essence and noted: "Because time is not usually of the essence in these contracts, if one party wishes to so condition the agreement, it is incumbent on that party to give clear and unequivocal notice to the other party so that the latter may chart his actions accordingly." *Id.*, 265 Pa.Superior Ct. at 88, 401 A.2d at 814. *See also, Shumaker v. Lear*, 235 Pa.Super. 509, 515, 345 A.2d 249, 252 (1975) (time may be necessarily implied to be of the essence). In the instant case, unlike in *Tanenbaum*, there was a modified time of the essence clause. Further, by their July 31, 1986, letter, appellees gave appellant "clear and unequivocal notice" that time was of the essence. The fact that appellees notified appellant on July 31, 1986, rather than August 1, 1986, does not relieve appellant of notification that time was of the essence and that he had a duty to deliver possession without delay.

Judgment is affirmed.