NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 13-1674
_____

GEORGE W. LINDER, SR., Trust;
WILLIAM H. LINDER, II, Trustee

v.

SWEPI, LP, a/k/a Shell Western Exploration and Production, LP

GEORGE W. LINDER, SR.;
WILLIAM H. LINDER, II,

Appellants
_____

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. No. 11-cv-01579)
District Judge: Honorable Sylvia H. Rambo
_____

Submitted Under Third Circuit LAR 34.1(a)
November 14, 2013

Before: HARDIMAN, SHWARTZ and SCIRICA, *Circuit Judges*.

(Filed: November 18, 2013)

_____

OPINION
_____

HARDIMAN, *Circuit Judge*.

The George W. Linder, Sr., Trust and its trustee, William H. Linder II

(collectively, the Trust), appeal the District Court's summary judgment on their claims for a declaratory judgment against Shell Western Exploration and Production, LP (SWEPI). We will affirm.

I

By written lease dated September 27, 2000 (the Lease), George and Phyllis Linder (the Trust's predecessor-in-interest) leased the oil and gas rights for 338 acres to SWEPI's predecessor-in-interest, Allegheny Energy Development Corporation. The initial Lease term was ten years with potential for extension pursuant to conditions typical in the industry. Before production began, the Lease required Allegheny Energy to make an annual delay payment of $3.00 per acre. Once production began, Allegheny Energy was to pay royalties instead of delay rentals. The Lease also provided that it would continue in effect past the initial term as long as productive activity continued. If Allegheny Energy was not engaged in productive activity when the initial ten-year term expired, the Lease authorized it to extend the Lease for ten more years by making an extension payment of $3.00 per acre prior to the expiration of the initial term in September 2010.

During the initial term of the Lease, Allegheny Energy sold its rights thereunder to East Resources Management, LLC, which unitized[1] an area of 526.94 acres, 137.81 acres

_____

[1] The Lease allowed the lessee to unitize all or part of the leasehold with other leaseholds. When oil and gas producers have more than one leasehold in an area, they

of which were part of the 338-acre Leasehold. Thus, 200.19 acres of the Leasehold were never unitized.

Before this litigation began, SWEPI acquired East Resources and its leases, and the Trust succeeded the Linders as lessor. The Trust and SWEPI agree that the Lease continued past the expiration of the initial term in September 2010 for the unitized acreage because SWEPI continued to engage in productive activity on the unit. The crux of this dispute is whether the Lease remains in effect for the 200.19 acres owned by the Trust that were never unitized. The matter is complicated by the inconsistent positions both parties adopted in their correspondence after the initial term ended.

The trouble began, innocuously enough, when the Trust demanded payment of $3.00 per acre delay rental on the non-unitized portion of the Lease. These demands, which were made by letters dated October 8, 2010, and April 24, 2011,[2] were consistent with the Lease's unitization clause, which states: "If the total unitized Leasehold acreage is less than 50 percent of the total Leasehold acreage, Delay Rental will continue to be paid on the non-unitized acreage." App. at 95.

---

may unitize so the producer can extract more oil and gas from the unit with fewer wells by treating the unitized acreage as its own production unit. 1 Summers Oil and Gas § 5:47 (3d ed. 2012).

[2] The Trust addressed these letters to East Resources, apparently unaware that SWEPI had acquired East Resources's leases.

SWEPI paid the Trust on May 2, 2011. For reasons that are not apparent in the record, however, SWEPI changed its position by letter dated May 16, 2011, in which it claimed that its delay payment was made in error because the Lease expired with respect to the non-unitized acreage when the initial term ended in September 2010. Curiously, in response to receiving SWEPI's May 16 letter, the Trust reversed its position. The Trust acquiesced in SWEPI's claim that the Lease was terminated as to the non-unitized acreage; it asked SWEPI to cancel or surrender the Lease for that acreage;[3] and it refunded SWEPI's final delay rental payment. Unwilling to take "yes" for an answer, SWEPI changed its position yet again. By letter dated June 20, 2011, in which it cited the change in ownership from East Resources as the cause of its confusion, SWEPI insisted that the May 2 check was a valid payment, and it voided the Trust's repayment check.

Unwilling to accept the return of its money in light of its second view of the matter, the Trust sued SWEPI in the Court of Common Pleas of Tioga County, Pennsylvania, seeking a declaratory judgment that the Lease expired on the non-unitized acreage on September 26, 2010. SWEPI removed the case to the United States District Court for the Middle District of Pennsylvania. The District Court granted SWEPI

---

[3] The Lease's surrender clause required SWEPI to record a Surrender of Lease to surrender and cancel all or part of the Leasehold. The Trust has no power to surrender the Lease.

4

summary judgment on the Trust's claims, and this timely appeal followed.[4]

## II

We exercise plenary review over the District Court's summary judgment. *Horvath v. Keystone Health Plan East, Inc.*, 333 F.3d 450, 454 (3d Cir. 2003). We will affirm if the moving party establishes that there is no genuine dispute of material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). We apply relevant state law when our jurisdiction is based on the parties' diversity of citizenship. *See Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938).

## III

The gravamen of the Trust's appeal is that "upon the occurrence of unitization of less than 50 percent of the entire leasehold, there are as a matter of law two leasehold parcels." Br. of Appellants at 20. As the District Court rightly noted, this is an untenable reading of the Lease. The Trust admits that SWEPI searched for gas on the Leasehold, *id.* at 8, and the Lease makes clear that SWEPI's productive activity extended the Lease in its entirety. By its very terms, the Lease continues in effect while "operations are conducted on the Leasehold in search of or production of oil, gas, or their constituents . . . ." App. at 93. Further, the Lease refers to the Leasehold as a single, undivided entity, 338 acres in size. App. at 93. The Trust challenges this seemingly obvious reading by insisting that

---

[4] The District Court had jurisdiction under 28 U.S.C. § 1332. We have jurisdiction under 28 U.S.C. § 1291.

SWEPI created two distinct leases when it unitized less than half of the Leasehold.  In support of this argument the Trust cites the last sentence of the Lease's Unitization Clause, which states:  "If the total unitized Leasehold acreage is less than 50 percent of the total Leasehold acreage, Delay Rental will continue to be paid on the non-unitized acreage."  App. at 95.  But this language does nothing to separate the unitized and non-unitized acreages into two separate leaseholds.  Rather, it simply obliges SWEPI to pay a delay rental of $3.00 per acre on the 200.19 acres that were not unitized.[5]  SWEPI's late payment did nothing to vitiate the fact that the Lease was extended into a second term by virtue of the lessee's productive activity during the initial term, which triggered the extension.

As the Trust correctly notes, SWEPI breached its contractual duty when it belatedly made its delay rental payment following the expiration of the initial Lease term in September 2010.  The District Court held that this breach was immaterial, however.  The Trust counters that SWEPI's late payment was material because the timely payment of delay rental is of the utmost importance to the lessor-lessee relationship.  We disagree.  A brief delay in payment of rent where the contract contains no "time-is-of-the-essence" provision does not amount to a material breach.  *See Gorzelsky v. Leckey*, 586 A.2d 952,

---

[5] The Trust argues *Hite v. Falcon Partners*, 13 A.3d 942 (Pa. Super. Ct. 2011), bars the extension of a lease into perpetuity by the mere payment of delay rental.  As discussed, this argument is unavailing because the Lease is extended by SWEPI's productive activity on the leasehold, not by the payment of delay rental.

6

956 (Pa. Super. Ct. 1991). The Trust also cites a clause in the Lease that gives SWEPI a 60-day cure period before the Trust can sue for forfeiture of the Lease. The Trust argues that because SWEPI failed to cure within 60 days, its belated payment was a material breach. Again, we disagree because this argument alters that clause's purpose, which is meant to improve the chances of an out-of-court resolution in the event of a breach by giving SWEPI a brief grace period to right its wrong. By its terms, the 60-day cure period relates only to the timeliness of bringing a lawsuit. It does not establish the materiality of a breach as would a time-is-of-the-essence clause.

Finally, we agree with the District Court that SWEPI did not surrender the non-unitized acreage by entering into a contract to surrender that part of the Leasehold. SWEPI would have had to record a Surrender of Lease to relinquish its rights under the Lease's surrender clause, which states: "Lessee may surrender and cancel this Lease as to all or any part of the Leasehold by recording a Surrender of Lease . . . ." App. at 95. Because that never happened, SWEPI did not surrender its rights to the non-unitized portion of the Leasehold.

III

For the reasons stated, we will affirm the judgment of the District Court.