J-S41019-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| ALLISON G. PFEIFFER | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| RHONDA L. ZAWASKI | : | No. 205 MDA 2019 |

Appeal from the Judgment Entered August 22, 2019
In the Court of Common Pleas of Schuylkill County Civil Division at
No(s):  S-2003-2009

BEFORE:   LAZARUS, J., MURRAY, J., and STRASSBURGER*, J.

MEMORANDUM BY MURRAY, J.:                    **FILED SEPTEMBER 13, 2019**

Allison  G.  Pfeiffer  (Appellant)  appeals  from  the  judgment  entered

against him and in favor of Rhonda L. Zawaski (Zawaski).[1]  Appellant avers

_____

* Retired Senior Judge assigned to the Superior Court.

[1] On February 4, 2019, following the denial of his post-trial motion, Appellant purported to appeal from the court's January 22, 2019 order, which dismissed his claims and directed him to convey title to Zawaski.  Upon review, this Court noted that judgment had not been entered, and directed Appellant to praecipe the trial court to enter judgment.  ***See Johnston the Florist, Inc. v. Tedco Constr. Corp.***, 657 A.2d 511, 514 (Pa. Super. 1995) (*en banc*) ("[A]n appeal to this Court can only lie from judgments entered subsequent to the trial court's disposition of any post-verdict motions, not from the order denying post-trial motions.").  Appellant complied, and the trial court entered judgment on August 22, 2019.  We deem Appellant's appeal properly taken from the subsequently-entered judgment.  ***See id.*** at 514-515 ("[T]here are some instances wherein a party has failed to enter judgment [due to oversight] and our appellate courts may 'regard as done that which ought to have been done.'").

that the court erred in: (1) not finding that Zawaski breached the parties' contract; (2) finding that time was not of the essence in the contract; and (3) ordering specific performance and directing Appellant to convey title of real property to Zawaski. Upon review, we affirm.

Appellant owned a mobile home and lot in Andreas, Schuylkill County, Pennsylvania. On August 1, 2001, Appellant and Zawaski executed a lease-purchase agreement (Initial Agreement) for the sale of the property for $55,000.[2] Zawaski paid Appellant $5,000 at signing, and pursuant to the agreement, was to pay the balance, with interest, over four years. The Initial Agreement also provided:

> 9. [Zawaski] agrees that they will make no alterations or repairs to the building other than normal maintenance and painting and repair work without the written permission of [Appellant].

> \* \* \*

> 12. If [Zawaski] shall default on any payment for a period in excess of thirty (30) days, including payment of the utility bills, this Agreement shall be ended and all payments made to that date, including the down payment, shall be considered as rent for said property and [Appellant] shall have the right to sell this property with no further rights in [Zawaski].

Initial Agreement, 8/1/01, at 3, 4.

Zawaski and her boyfriend, Daniel Hartnung, lived together in the property. However, Zawaski was delinquent with payments, and on March 3,

---

[2] The parties entered into this agreement, as well as a March 3, 2006 amended agreement, *pro se*.

2006, the parties executed a second agreement (Amended Agreement), to "extend" the Initial Agreement through March 3, 2008. Agreement of Sale Amendment (Amended Agreement), 3/3/06, at 1. This agreement, drafted by Zawaski's sister, stated that the principal balance was $47,630.48; on the date of signing, Zawaski paid Appellant $2,137. The Amended Agreement provided that Zawaski would pay Appellant $135 weekly until the balance was paid. Neither the Initial Agreement nor Amended Agreement included a "time is of the essence" provision.

On February 21, 2009 — almost one year after the end-date contemplated in the Amended Agreement — Appellant served a notice of eviction on Zawaski, alleging that he was owed two months' rent. We note that at trial, Zawaski presented approximately 49[3] handwritten receipts for cash payments she made to Appellant between August 2006 and March 2009. Zawaski did not vacate the property, and Appellant filed a landlord/tenant complaint in the Magisterial District Court. On July 8, 2009, the Magisterial District Judge awarded Appellant $2,457.25 in unpaid rent and costs.

_____

[3] The certified record includes 49 copies of receipts, which generally included little information. Some receipts listed multiple dates and amounts — most of which represented the amounts paid but some of which showed the balance due — and some receipts included more than one signature from Appellant. For ease of discussion, we use Appellant's calculation that Zawaski presented 49 receipts. *See* Appellant's Brief at 17, 26. These receipts indicate that Zawaski paid Appellant a total of $18,490.

- 3 -

Zawaski appealed to the Court of Common Pleas of Schuylkill County, and Appellant filed a complaint on September 22, 2009, seeking unpaid rent as well as possession of the property. Beginning in August of 2009, Zawaski paid $585 per month into escrow with the trial court prothonotary, which remitted the funds to Appellant.[4] N.T. Trial, 1/3/19, at 111 (testimony of Schuylkill County First Deputy Prothonotary John Fekety).

The case proceeded to an arbitration panel, which awarded Appellant $1,085.[5] Zawaski appealed to the trial court. In September 2012, Zawaski filed a counter-claim, requesting specific performance of both the Initial and Amended Agreements. In support, Zawaski averred: (1) beginning with the 2006 Initial Agreement, she paid Appellant more than $19,975 in installment payments and has provided Appellant "numerous receipts"; (2) she additionally paid into escrow more than $21,060; (3) over the 11 years that she was in exclusive possession of the property, Zawaski made numerous improvements; and (4) she consequently had a substantial equity interest in the property and forfeiture would be inequitable. Zawaski's Amended Counterclaim, 9/27/12, at 2-4.

_____

[4] The trial court prothonotary initially retained Zawaski's payments, but upon trial court order, mailed Appellant a lump sum of the total amount received, and subsequently mailed him monthly checks. N.T. Trial, 1/3/19, at 112.

[5] The parties stipulated that the issue of possession was beyond the arbitrators' jurisdiction.

On May 17, 2018, the trial court ordered Zawaski to secure a handwriting expert to review the receipts allegedly signed by Appellant, and to provide Appellant with a copy of the expert's report by August 1, 2018.

The case proceeded to a bench trial on January 3, 2019, with both parties represented by counsel. By that time, Zawaski and Hartnung had lived in the property for 18 years. N.T. Trial, 1/3/19, at 4, 94-95. The trial court inquired about Zawaski's retention of a handwriting expert, and Zawaski responded that she did not employ an expert because it was "cost prohibitive." *Id.* at 3. Appellant did not object. When Zawaski introduced each of the 49 receipts into evidence, Appellant stated that he would not stipulate to their authenticity, but did not challenge their admission or the lack of a handwriting expert. *Id.* at 62-82; *see also id.* at 80 (no stipulation).

Zawaski argued that her receipts, dated August 2006 through March of 2009, documented cash payments to Appellant. Appellant acknowledged that he signed most of the receipts, but denied that the signatures on approximately five receipts were his. N.T. Trial, 1/3/19, at 120-137. Appellant also disputed some of the receipts which showed multiple payments, and testified instead that he received only one payment. *Id.* Additionally, Appellant testified that he did not keep receipts or a ledger of payments; did not know whether he deposited any of Zawaski's cash payments into his bank account; only knew how much Zawaski had paid "[b]y her receipts"; and had "no idea" how much she owed him as of trial. *Id.* at 48-49, 57.

Zawaski and Hartnung also testified about improvements they made to the property, including new hardwood floors, new kitchen cabinets and countertops, new floors in both bathrooms due to water leaks, a new water heater, central air conditioning, new appliances, new front and back doors, landscaping, and roof repairs. N.T. Trial, 1/3/19, at 88-89, 100-101. Hartnung testified that the new floors were not merely "improvements," but were necessary due to burst pipes. *Id.* at 100. Hartnung stated that he told Appellant about a water leak, but Appellant responded that Hartnung had to fix it. *Id.* Appellant denied any knowledge of the improvements or the water leaks, *id.* at 45-46, but Zawaski testified that Appellant went to the property and observed the new floors and cabinets. *Id.* at 88.

First Deputy Prothonotary Fekety testified that from July 2009 through April 2016, Zawaski paid $585 monthly into escrow. N.T. Trial, 1/3/19, at 110-116. Zawaski testified that she stopped making escrow payments because she calculated that her escrow payments alone totaled more than $46,000. *Id.* at 18.

Additionally, Zawaski testified that it was never her intention to rent the property, and she "wanted to buy it." N.T. Trial, 1/3/19, at 59. On cross-examination, Appellant confronted Zawaski with her response to a discovery

interrogatory, "Do you own or rent this property?"[6] *See* N.T. Trial, 1/3/19, at 13-14. Zawaski responded, "I rent this property." *See id.* The following exchange occurred:

> [Appellant's counsel:] Do you disagree with the response?
>
> [Zawaski:] I disagree with it for the rent because I wasn't renting the property. It was to purchase it.
>
> Q. Okay. You say you weren't renting the property as of March 15, 2011?
>
> A. No, it was to buy the property.
>
> Q. . . . Do you own the property or do you rent the property?

*Id.* at 14. At this point, Zawaski's counsel objected to Appellant asking Zawaski "to make a legal conclusion about the ultimate determination of this case as to whether . . . she developed an equitable interest." *Id.* at 15. Zawaski's counsel argued that Zawaski had "answered what her factual understanding" was. *Id.* The court sustained the objection. *Id.*

The proceedings concluded and on January 17, 2019, both parties submitted proposed findings of fact and conclusions of law.

On January 22, 2019, the trial court issued an order, concluding that Zawaski performed her obligation under the Initial and Amended Agreements. The trial court found Zawaski's testimony to be credible, her receipts

---

[6] In his presentation of evidence, Appellant first called Zawaski to testify as if on cross. N.T. Trial, 1/3/19, at 3. Appellant cross-examined Zawaski again after she testified on direct examination. *Id.* at 90.

"trustworthy," and the testimony of Zawaski and First Deputy Prothonotary Fekety about the escrow payments to be "accurate." Trial Court Opinion, 1/22/19, at 3. Citing Appellant's testimony that he did not keep receipts or a record of Zawaski's payments, and that he had "no idea" how much money Zawaski owed him, the court further found Appellant's testimony not credible, "ambiguous and ambivalent as to the amount he was actually paid." *Id.* at 1-3. The court stated it "was unable to determine [Appellant's] damages from his testimony from the record," and concluded Appellant "failed to carry his burden of proof." *Id.* at 3. Further, the court found that where the record established that Appellant accepted late payments "over many years" and neither the Initial nor Amended Agreements provided "time is of the essence," Zawaski acquired an equitable interest in the property. *Id.* The court dismissed Appellant's complaint and directed him to convey title of the property to Zawaski within 60 days.

Appellant filed a timely post-trial motion for reconsideration, which the trial court denied on January 30, 2019. As discussed above, Appellant filed this appeal. The court did not direct Appellant to comply with Pennsylvania Rule of Appellate Procedure 1925(b).

On appeal, Appellant presents the following issues:

[1.] WHETHER THE TRIAL COURT COMMITTED AN ERROR OF LAW, ABUSED ITS DISCRETION OR OTHERWISE RULED IMPROPERLY IN DISREGARDING MS. ZAWASKI'S ADMITTED ACTS AND OMISSIONS IN DEFAULT OF THE TERMS OF THE PARTIES' AGREEMENT AND AMENDMENT THERETO.

[a.] WHETHER THE TRIAL COURT IMPROPERLY DISREGARDED MS. ZAWASKI'S EXPRESS ADMISSION THAT SHE FAILED TO PAY THE ENTIRE BALANCE DUE BY OR BEFORE THE EXPRESS DEADLINE OF MARCH 3, 20[0]8.

[b.] WHETHER THE TRIAL COURT IMPROPERLY DISREGARDED MS. ZAWASKI'S ADMITTED DEFAULT UNDER THE TERMS OF THE AGREEMENT AND AMENDMENT BY MAKING VARIOUS SUBSTANTIAL ALTERATIONS AND REPAIRS TO THE PROPERTY WITHOUT OBTAINING WRITTEN PERMISSION FROM (OR OTHERWISE PROVIDING ADVANCE NOTICE TO) [APPELLANT].

[c.]. WHETHER THE TRIAL COURT IMPROPERLY DISREGARDED MS. ZAWASKI'S EXPRESS ADMISSION THAT ALL AMOUNTS PAID TO [APPELLANT] FOLLOWING HER DEFAULT WERE CONVERTED TO PAYMENTS OF RENT PURSUANT TO PARAGRAPH 12 OF THE AGREEMENT.

[2.] WHETHER THE TRIAL COURT IMPROPERLY DETERMINED THAT TIME WAS NOT OF THE ESSENCE TO THE PARTIES' AGREEMENT.

[3.[7]] WHETHER THE TRIAL COURT IMPROPERLY DISREGARDED THE AUTHORITY OF *Tanenbaum v. Sears, Roebuck* [*& Co.*], 401 A.2d 809 (Pa. Super. 1979).

[4.] WHETHER THE TRIAL COURT IMPROPERLY DISREGARDED CREDIBLE TESTIMONY AND OBJECTIVE DOCUMENTARY EVIDENCE THAT MS. ZAWASKI FORGED [APPELLANT'S] SIGNATURE ON PAYMENT RECEIPTS AND ADDED HANDWRITTEN ENTRIES ON OTHERWISE GENUINE RECEIPTS AFTER [APPELLANT] SIGNED THEM.

[5.] WHETHER THE TRIAL COURT IMPROPERLY FAILED TO APPLY THE RULE OF *CONTRA PROFERENTUM* ("AGAINST THE OFFEROR") TO THE AMENDMENT WHICH MS. ZAWASKI PERSONALLY COMMISSIONED AND OFFERED TO [APPELLANT].

[6.] WHETHER THE TRIAL COURT COMMITTED AN ERROR OF LAW,

---

[7] Appellant's issue concerning *Tanenbaum* is subsumed in the discussion of his second issue. *See* Appellant's Brief at 33-35.

ABUSED ITS DISCRETION OR OTHERWISE RULED IMPROPERLY IN GRANTING MS. ZAWASKI THE EXTRAORDINARY REMEDY OF SPECIFIC PERFORMANCE DESPITE THE LACK OF A NECESSARY FINDING OF A VIOLATION OF THE AGREEMENT BY THE SELLER, [APPELLANT].

> [a.] WHETHER THE TRIAL COURT IMPROPERLY DISREGARDED AND/OR MISAPPLIED THE AUTHORITY OF ***Oliver v. Ball***, 136 A.3d 162 (Pa. Super. 2016).

Appellant's Brief at 8-10.

We address Appellant's first three issues together because they raise overlapping claims. First, Appellant avers that the trial court erred in disregarding Zawaski's admissions that she failed to make payments as required under the Initial Agreement; altered and repaired the property without first obtaining written permission; and failed to pay, pursuant to the Amended Agreement, the entire principal balance by March 3, 2018. To this latter point, Appellant challenges the authenticity of Zawaski's receipts, and maintains that even if they were all deemed genuine, the receipts reflected that prior to March 3, 2008, Zawaski paid only $10,600. Appellant contends that Zawaski was bound by the agreements' provisions that if she defaulted at any time, the Initial Agreement would end and Appellant could retain all payments as rent. Appellant also claims that the trial court erred in disregarding Zawaski's response to interrogatories, that she rented, rather than owned, the property.

Next, Appellant avers that the trial court improperly concluded that time was not of the essence in the parties' agreements. He relies on ***Tanenbaum***,

401 A.2d 809, which states, "[i]t has been generally noted that **at law**, time is of the essence in a contract for the sale of land even though there is no particular provision in the contract explicitly stating this." Appellant's Brief at 34, *quoting* **Tanenbaum**, 401 A.2d at 812 (emphasis in Appellant's brief). Appellant concedes that "the principle that 'time is of the essence' has been somewhat relaxed" in courts of equity, but maintains that at law, a "time is of the essence" provision is implied in a contract. **Id.** at 34. Appellant maintains that here, the Amended Agreement expressly provided: (1) the Initial Agreement was extended through March 3, 2008; and (2) Zawaski's default on any payment would result in termination of the Amended Agreement. We disagree.

As stated above, the trial court dismissed Appellant's action after finding that he failed to establish damages. Trial Court Opinion, 1/22/19, at 3. This Court has stated:

> With respect to specific performance, our Supreme Court explained . . .:
>
> From the moment an agreement of sale of real estate is executed and delivered it vests in the [purchaser] what is known as an equitable title to the real estate. Thereupon the vendor [seller] is considered as a trustee of the real estate for the purchaser and the latter becomes a trustee of the balance of the purchase money for the seller. Hence, if the terms of the agreement are violated by the [seller, the purchaser[8]] may go into a court of equity seeking to enforce the contract and to

---

[8] In response to Appellant's final issue, we discuss **infra** that **Oliver** provides for a buyer to seek specific performance.

compel specific performance.

> In other words, a request for specific performance is an appeal to the court's equitable powers. Specific performance generally is described as the surrender of a thing in itself, because that thing is unique and thus incapable — by its nature — of duplication. "A decree of specific performance is not a matter of right, but of grace." Such a decree will be granted only if a plaintiff clearly is entitled to such relief, there is no adequate remedy at law, and the trial court believes that justice requires such a decree. . . .

*Oliver*, 136 A.3d at 166 (citations omitted).

"[W]here time is not of the essence, the mere failure to perform on the date mentioned in a contract is not *per se* a breach which wholly destroys the contract." *Gorzelsky v. Leckey*, 586 A.2d 952, 956 (Pa. Super. 1991) (citation omitted). "A contract, either oral or written, may be modified by a subsequent agreement which is supported by legally sufficient consideration, or a substitute therefor, and meets the requirements for contract formation." *Shedden v. Anadarko E. & P. Co., L.P.*, 136 A.3d 485, 490 (Pa. 2016). Finally, we recognize that "[c]oncerning questions of credibility and weight accorded the evidence at trial, we will not substitute our judgment for that of the finder of fact." *V-Tech Servs. v. Street*, 72 A.3d 270, 275 (Pa. Super. 2013) (citation omitted).

Here, any argument concerning Zawaski's actions prior to the Amended Agreement are meritless, as the Amended Agreement indicated that Appellant agreed, **despite** Zawaski's payment history, to the extension of the Initial Agreement and revised terms of payment. *See Shedden*, 136 A.3d at 490; Amended Agreement, 3/3/06, at 1 ("[Appellant] will extend The [Initial

- 12 -

Agreement] for an additional [24] months."). With respect to the untimeliness of payments under the Amended Agreement, Appellant ignores the trial court's finding that Appellant nevertheless accepted all the payments. *See* Trial Court Opinion, 1/22/19, at 1-3. Finally, in challenging the trial court's equity findings, Appellant does not address that Zawaski's evidence — credited by the trial court — established that he received approximately $18,490 in cash **plus** $47,385 in escrow payments from Zawaski.

Additionally, the record supports the trial court's finding that the actions of both Appellant and Zawaski, "over many years," established that neither party perceived that time was of the essence. *See Gorzelsky*, 586 A.2d at 956; Trial Court Opinion, 1/22/19, at 3.

Finally, we are not persuaded by Appellant's reliance on Zawaski's interrogatory response that she "rented" the property. Appellant ignores the trial court's ruling sustaining Zawaski's objection to Appellant asking Zawaski "to make a legal conclusion about the ultimate" issue in this case. *See* N.T. Trial, 1/3/19, at 15. Further, Appellant fails to address Zawaski's testimony at trial that it was her intent to buy, not rent, the property. *See id.* at 59.

In Appellant's next issue, he avers that "[t]he trial court improperly disregarded credible testimony and objective documentary evidence that . . . Zawaski forged [his] signature on payment receipts and added handwritten

entries on otherwise genuine receipts after [he] signed them."[9]  Appellant's Brief at 32.  Appellant also points out that Zawaski did not comply with the trial court's May 17, 2018 order to retain a handwriting expert.

Although Appellant refers to "objective documentary evidence that . . . Zawaski forged [his] signature," he does not explain what this evidence is, and our review of the record reveals he did not present any such evidence. *See* Appellant's Brief at 32.  Instead, it appears that Appellant relies solely on his testimony denying the authenticity of the signatures and amounts on some of Zawaski's receipts.  As stated above, the trial court found Zawaski's testimony to be credible, and conversely, that Appellant's testimony, especially concerning payments, was not credible.  Trial Court Opinion, 1/22/19, at 3.  This Court may not reweigh the evidence in Appellant's favor and supplant the trial court's findings of fact with our own.  *See V-Tech Servs.*, 72 A.3d at 275.  Additionally, Appellant has waived any appellate argument concerning the lack of a handwriting expert, because he did not

---

[9] The record does not support an assertion by Appellant's counsel that Appellant "candidly revealed that he is somewhat illiterate."  Appellant's Brief at 32.  Appellant's testimony, cited by counsel in support of this claim, was: "I don't spell, so I don't ever write anything.  My spelling is terrible.  That ain't my signature."  *See* N.T., 1/3/19, at 131 (Appellant responding to his counsel asking whether Appellant wrote a receipt dated 5/3/07).  Also, at counsel's request, Appellant read aloud several portions of the Amended Agreement. *Id.* at 30, 32-33.

raise this issue before or at trial or in his proposed findings of fact.[10] **See** Pa.R.A.P. 302(a) ("Issues not raised in the lower court are waived and cannot be raised for the first time on appeal.").

Next, Appellant asserts the trial court failed to apply the principle *contra proferentum* to the Amended Agreement, which was drafted by Zawaski's sister. Appellant claims this principle "requires the court to construe the **disputed language** against the drafter, and in favor of the opposing party, so long as such interpretation is reasonable." Appellant's Brief at 36 (emphasis added). Appellant argues that Zawaski cannot "argue in equity against the **clear and unambiguous terms**" that the Initial Agreement is extended through March 3, 2008. **Id.** (emphasis added).

This Court has stated: "It is a well-settled principle of contract construction that terms are construed *contra proferentum*, that is, against the drafter." **West Dev. Group, Ltd. v. Horizon Financial, F.A.**, 592 A.2d 72,

---

[10] Appellant does not cite any place in the record where he preserved his issue. **See** Pa.R.A.P. 2117(c) (statement of the case shall specify state of the proceedings in court at which the questions sought to be reviewed were raised). Additionally, Appellant did not raise, nor could he have raised, this handwriting-expert issue in his post-trial motion. **See** Pa.R.Civ.P. 227.1(b)(1) ("[P]ost-trial relief may not be granted unless the grounds therefor . . . if then available, were raised in pre-trial proceedings or by motion, objection, point for charge, request for findings of fact or conclusions of law, offer of proof or other appropriate method at trial[.]"); **Diamond Reo Truck Co. v. Mid-Pacific Indus.**, 806 A.2d 423, 428 (Pa. Super. 2002) (failure to include issue in post-trial motion resulted in waiver of that issue on appeal).

75 (Pa. Super. 1991). Under the doctrine of *contra proferentum*, "the provisions of a contract are to be construed against the drafter when language is susceptible to more than one reasonable interpretation." ***Dick Enters. v. Commonwealth***, 746 A.2d 1164, 1170 (Pa. Cmwlth. 2000).[11]

Appellant's reliance on the *contra proferentum* doctrine is misplaced. That doctrine applies when parties dispute the meaning of a contract provision. ***See id.*** Appellant does not allege any such disagreement with Zawaski over a particular term in the Amended Agreement. Instead, Appellant's argument is that Zawaski should not be permitted to repudiate "the clear and unambiguous term[ ]" that the Amended Agreement would conclude on March 3, 2008. Appellant's Brief at 36. Accordingly, Appellant's *contra proferentum* argument lacks merit.

Finally, Appellant claims that the trial court erred in granting Zawaski specific performance where the court did not make a finding that **Appellant** violated the parties' agreements. Appellant cites ***Oliver***, 136 A.3d at 166, stating: "[S]pecific performance is an appropriate remedy to compel the conveyance of real estate **where a seller violates a realty contract** and specific enforcement of the contract would not be contrary to justice." Appellant's Brief at 38 (emphasis in Appellant's brief). Appellant maintains

---

[11] Although this Court is not bound by decisions of the Commonwealth Court, such decisions may provide persuasive authority. ***Petow v. Warehime***, 996 A.2d 1083, 1089 n.1 (Pa. Super. 2010).

that Zawaski violated the Initial and Amended Agreements. Appellant thus concludes that he is entitled to immediate possession of the property "in substantially the same condition and repair as the date of trial . . . together with all fixtures and improvements thereon."[12] *Id.* at 39.

Appellant implies that a **buyer** of real property may not seek, and is not entitled to, specific performance, and that a finding that the seller violated a contract is required before specific performance may be granted. Such claims are not supported by the legal authority upon which Appellant himself relies. While Appellant correctly quotes *Oliver*, he disregards that several decisions cited by the Court in *Oliver* affirmed specific performance in favor of the **buyer**. *See Oliver*, 136 A.3d at 167. We explained:

> Courts in this Commonwealth consistently have determined that specific performance is an appropriate remedy to compel the conveyance of real estate where a seller violates a realty contract and specific enforcement of the contract would not be contrary to justice. *See Borie v. Satterthwaite*, [37 A. 102] (Pa. 1897) (affirming specific performance for breach of real estate agreement); *see also Agnew v. Southern Ave. Land Co.*, . . . 53 A. 752 (Pa. 1902) (noting that a court may enforce specifically

---

[12] In discussing this issue, Appellant includes two unrelated claims: (1) that Zawaski's "sudden, unilateral cessation of . . . payments of rent on April 20, 2016," cannot be considered "performance within a 'reasonable time' and 'in substantial accordance with the contract terms;'" and (2) that Zawaski engaged in litigation delay tactics. *See* Appellant's Brief at 37-38. We addressed Zawaski's payments in our discussions *supra*, and Appellant presents no legal authority, nor any particular request for relief, relating to his claims of litigation delays. *See Harris v. Toys "R" Us-Penn, Inc.*, 880 A.2d 1270, 1279 (Pa. Super. 2005) (failure to develop an argument with citation to, and analysis of, relevant authority waives that issue on review). Thus, we do not address these claims further.

only an agreement for realty whose terms are definite); **Rusiski v. Pribonic**, . . . 515 A.2d 507, 510 (Pa. 1986) (affirming only the award of specific performance for breach of a realty agreement); **Petry v. Tanglwood Lakes, Inc.**, . . . 522 A.2d 1053, 1055 (Pa. 1987) (noting that real estate contracts "have been traditionally regarded as being specifically enforceable in equity **by the buyer**"); **Cimina** [**v. Bronich**, 537 A.2d 1355, 1360 (Pa. 1988)] (reversing this Court's decision to overrule the trial court's grant of specific performance for a breach of realty agreement).

**Id.** (emphasis added).

In both the 1897 **Borie** and 1986 **Rusiski** decisions, our Supreme Court affirmed the buyers' requests for specific performance. **See Rusiski**, 515 A.2d at 508, 511; **Borie**, 37 A. 102. Likewise, in **Petry**, this Court held, as plainly stated in the **Oliver** passage itself, that the buyer's complaint for specific performance was appropriately granted. **See Petry**, 522 A.2d at 1053, 1057. Thus, Appellant is not entitled to relief.

In sum, we discern no error by the trial court in dismissing Appellant's complaint and directing conveyance of the property to Zawaski.

Judgment affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/13/2019